# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Corbin R. Davis

## BONNER v CITY OF BRIGHTON

Docket No. 146520. Argued December 12, 2013 (Calendar No. 3). Decided April 24, 2014.

Leon V. and Marilyn E. Bonner brought an action against the city of Brighton in the Livingston Circuit Court, claiming that the city's order under Brighton Code of Ordinances (BCO) § 18-59 to demolish three unoccupied residential structures on their property violated their procedural and substantive due process rights. BCO § 18-59 states that if a structure is determined unsafe as defined under the standards set forth in BCO § 18-46 and the cost of the repairs would exceed 100 percent of the true cash value of the structure before it was deemed unsafe, the repairs are presumed unreasonable and the structure is presumed to be a public nuisance that may be ordered demolished without providing the owner an option to repair it. Under this provision, the city notified plaintiffs of the structures' defects and code violations, informed them that the structures had been deemed unsafe and were presumed to be a public nuisance, and ordered them to demolish the structures within 60 days with no option to repair. Plaintiffs appealed this determination under the process set forth in BCO § 18-61 to the city council, which concluded that the buildings were unsafe and unreasonable to repair under BCO § 18-59 and that demolition was required within 60 days of the order. Plaintiffs then filed an independent cause of action in the circuit court, alleging various constitutional claims, and the city thereafter filed its own action in the circuit court to enforce the demolition order. The court, Michael P. Hatty, J., denied the city's request for a preliminary injunction and granted plaintiffs partial summary disposition, concluding that BCO § 18-59 violated substantive due process on its face by not giving property owners the opportunity to repair their property. The circuit court denied the city's motion for reconsideration. The Court of Appeals, MARKEY, P.J., and SHAPIRO, J. (MURRAY, J., dissenting), granted the city's application for leave to appeal and affirmed, holding that BCO § 18-59 violated property owners' substantive and procedural due process rights. 298 Mich App 693 (2012). The Supreme Court granted the city's application for leave to appeal. 494 Mich 873 (2013).

In a unanimous opinion by Justice KELLY, the Supreme Court *held*:

BCO § 18-59 did not constitute an unconstitutional deprivation of substantive due process because the ordinance's unreasonable-to-repair presumption was reasonably related to the city's legitimate interest in promoting the health, safety, and welfare of its citizens. The ordinance was not an arbitrary and unreasonable restriction on a property owner's use of his or her property because there were circumstances under which the presumption could be overcome and repairs permitted. Further, the demolition procedures provided property owners with

procedural due process by providing the right to appeal an adverse decision to the city council as well as the right to subsequent judicial review. Because plaintiffs did not show that no aggrieved property owners could meaningfully exercise their right to review or that such review was not conducted impartially, they failed to establish that BCO § 18-59, on its face, violated procedural due process rights.

1. The Court of Appeals erred by failing to separately analyze plaintiffs' substantive and procedural due process claims. The substantive component of due process protects against the arbitrary exercise of governmental power, whereas the procedural component ensures constitutionally sufficient procedures for the protection of life, liberty, and property interests. Accordingly, whether BCO § 18-59 was facially unconstitutional for denying property owners the opportunity to repair unsafe structures in violation of the right to substantive due process was a distinct issue from whether the ordinance was facially unconstitutional for permitting the demolition of unsafe structures without providing adequate procedural safeguards in violation of the right to procedural due process.

2. The ordinance did not facially violate property owners' substantive due process rights. Because property owners do not have a fundamental right to repair a structure municipally deemed unsafe before that structure can be demolished, the government's interference with that right need only be reasonably related to a legitimate governmental interest. BCO § 18-59 was enacted pursuant to the city's police powers, and its purpose was to abate a public nuisance by requiring repair or demolition of unsafe structures. Nuisance abatement is a legitimate exercise of police power, and demolition is a permissible method of achieving that end. Further, plaintiffs did not show that BCO § 18-59 violated their substantive due process rights as an arbitrary and unreasonable restriction on their property interests given that the unreasonable-to-repair presumption could be overcome by presenting a viable repair plan, evidence from the challenger's own experts that the repair costs would not exceed 100 percent of the property value, or evidence that the structure subject to demolition has some sort of cultural, historical, familial, or artistic value. The unreasonable-to-repair presumption in BCO § 18-59 was also not arbitrary because it did not represent a total prohibition on a property owner's opportunity to repair an unsafe structure and it applied uniformly to all nonexempt structures that had repair costs in excess of 100 percent of their value before they became unsafe.

3. Plaintiffs failed to establish that BCO § 18-59 constituted a facial procedural due process violation. Affording a property owner an option to repair as a matter of right was not required before an unsafe structure could be demolished, and existing procedures in the ordinance comported with due process. Specifically, BCO § 18-52 required the city manager to serve the structure's owner with written notice of the determination whether the structure at issue can be made safe or whether demolition will ensue and of the owner's right to appeal this determination to the city council pursuant to BCO § 18-61, and the owner had the right to appeal the city council's decision to the circuit court pursuant to BCO § 18-63. The city was not required to provide for a reasonable opportunity to repair the unsafe structure in order for the ordinance to pass constitutional scrutiny, and the unreasonableness-to-repair presumption was rebuttable.

Court of Appeals judgment reversed; case remanded to the trial court for further proceedings.

©2014 State of Michigan

# Opinion

Chief Justice:    Justices:
Robert P. Young, Jr.    Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

FILED APRIL 24, 2014

STATE OF MICHIGAN

SUPREME COURT

LEON V. BONNER and MARILYN E.
BONNER,

     Plaintiffs/Counter-Defendants-
     Appellees,

v                    No. 146520

CITY OF BRIGHTON,

     Defendant/Counter-Plaintiff-
     Appellant.

BEFORE THE ENTIRE BENCH

KELLY, J.

This case involves two landowners' facial challenge to the constitutionality of § 18-59 of the Brighton Code of Ordinances (BCO), which creates a rebuttable presumption that an unsafe structure may be demolished as a public nuisance if it is determined that the cost to repair the structure would exceed 100 percent of the structure's true cash value as reflected in assessment tax rolls before the structure became unsafe. Specifically, we address whether this unreasonable-to-repair presumption

violates substantive and procedural due process protections by permitting demolition without affording the owner of the structure an option to repair as a matter of right.

As a preliminary matter, we clarify that the landowners' substantive due process and procedural due process claims implicate two separate constitutional rights, and that we must analyze each claim under separate constitutional tests. The Court of Appeals therefore erred by improperly conflating these analyses and subsequently determining that BCO § 18-59 facially violates plaintiffs' general due process rights. Instead, when each due process protection is separately examined pursuant to the proper test, the ordinance does not violate either protection on its face.

We hold that BCO § 18-59 does not constitute an unconstitutional deprivation of substantive due process because the ordinance's unreasonable-to-repair presumption is reasonably related to the city of Brighton's legitimate interest in promoting the health, safety, and welfare of its citizens. Furthermore, the ordinance is not an arbitrary and unreasonable restriction on a property owner's use of his or her property because there are circumstances under which the presumption may be overcome and repairs permitted.

We likewise hold that the city of Brighton's existing demolition procedures provide property owners, including plaintiffs, with procedural due process. Contrary to plaintiffs' argument, the prescribed procedures are not faulty for failing to include an automatic repair option, which is, in essence, plaintiffs' substantive due process argument recast in procedural due process terms. For purposes of this facial challenge, it is sufficient that aggrieved parties are provided the right to appeal an adverse decision to the city council as well as the right to subsequent judicial review. For the facial challenge to succeed, plaintiffs must show that no aggrieved property owners can meaningfully

2

exercise their right to review or that such review is not conducted impartially. Because they have not done so, plaintiffs have failed to establish that BCO § 18-59, on its face, violates their procedural due process rights.

We therefore reverse the judgment of the Court of Appeals and remand this case to the Livingston Circuit Court for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiffs Leon and Marilyn Bonner own two residential properties, 122 E. North Street and 116 E. North Street, both located in downtown Brighton. Situated on these properties are three structures—two former residential homes and one barn/garage—all of which have been unoccupied and generally unmaintained for over 30 years. In January 2009, defendant city of Brighton's (the City) building and code enforcement officer, James Rowell (the building official), informed plaintiffs via written notice that these three structures had been deemed "unsafe" in violation of the Brighton Code of Ordinances, and further constituted public nuisances in violation of Michigan common law.[1] Plaintiffs were also informed of the building official's additional determination that it was unreasonable to repair these structures consistent with the standard set forth in BCO § 18-59, which provides in its entirety as follows:

---

[1] Specifically, the property was deemed "unsafe," as defined by BCO § 18-46, for the following defects: "collapsing porch structure and foundations for same; collapsing porch roof structure; damaged or missing shingles; rotted roof sheathing; lacking platform at front door; rotted and damaged wood siding; damaged/collapsing rear porch roof structure; damaged or missing stairs, handrails, guardrails at rear porch; damaged/missing footings for rear porch; rotted rafters; fascia and exterior trim; damaged and/or lacking foundations; and repair damaged chimney." This list only included violations observable from outside the structures.

> *Whenever the city manager, or his designee, has determined that a structure is unsafe and has determined that the cost of the repairs would exceed 100 percent of the true cash value of the structure as reflected on the city assessment tax rolls in effect prior to the building becoming an unsafe structure, such repairs shall be presumed unreasonable and it shall be presumed for the purpose of this article that such structure is a public nuisance which may be ordered demolished without option on the part of the owner to repair.* This section is not meant to apply to those situations where a structure is unsafe as a result of an event beyond the control of the owner, such as fire, windstorm, tornado, flood or other Act of God. If a structure has become unsafe because of an event beyond the control of the owner, the owner shall be given by the city manager, or his designee, reasonable time within which to make repairs and the structure shall not be ordered demolished without option on the part of the owner to repair. If the owner does not make the repairs within the designated time period, then the structure may be ordered demolished without option on the part of the owner to repair. The cost of demolishing the structure shall be a lien against the real property and shall be reported to the city assessor, who shall assess the cost against the property on which the structure is located.[2]

Consequently, plaintiffs were ordered to demolish the structures within 60 days of the date of the building official's letter.

Because demolition had been ordered without an option to repair, plaintiffs appealed the building official's determination to the Brighton City Council (city council) pursuant to the appellate process set forth in BCO § 18-61, which provides in relevant part:

> An owner of a structure determined to be unsafe may appeal the decision to the city council. The appeal shall be in writing and shall state the basis for the appeal. . . . The owner or his agent shall have an opportunity to be heard by the city council at a regularly scheduled council meeting. The city council may affirm, modify, or reverse all or part of the determination of the city manager, or his designee.

---

[2] Emphasis added. The italicized language reflects what we refer to as the unreasonable-to-repair presumption.

4

Initially, the city council stayed its review pending the building official's interior inspection of the structures. However, despite having previously agreed to allow the building official interior access, plaintiffs thereafter refused entry, causing the City to petition for and obtain administrative search warrants. On May 27, 2009, the building official and several other representatives of the City inspected the structures and found over 45 unsafe conditions therein. The hearing resumed on June 4, 2009, and June 18, 2009, during which the city council received written reports and heard oral testimony from both parties on the issues of the City's findings and conclusions pursuant to the interior and exterior inspection of the premises, as well as its cost estimates for the structures' repair versus their demolition. On July 16, 2009, the city council unanimously affirmed the building official's determination that the structures were unsafe under all ten of the standards set forth in BCO § 18-46.[3] The city council likewise found that plaintiffs

---

[3] BCO § 18-46 provides,

*Unsafe structure* means a structure which has any of the following defects or is in any of the following conditions:

(1) A structure, because of dilapidation, decay, damage, faulty construction, or otherwise which is unsanitary or unfit for human use;

(2) A structure that has light, air, or sanitation facilities which are inadequate to protect the health, safety, or general welfare of those who live or may live within;

(3) A structure that has inadequate means of egress as required by this Code;

(4) A structure, or part thereof, which is likely to partially or entirely collapse, or some part of the foundation or underpinning is likely to fall or give way so as to injure persons or damage property;

had been maintaining unsafe structures in violation of BCO § 18-47,[4] that the structures were unreasonable to repair under BCO § 18-59, and that demolition was required within 60 days of its decision.[5]

Rather than appeal the city council's decision to the Livingston Circuit Court as an original action per BCO § 18-63,[6] plaintiffs instead filed this independent cause of action

(5) A structure that is in such a condition so as to constitute a nuisance, as defined by this Code;

(6) A structure that is hazardous to the safety, health, or general welfare of the people of the city by reason of inadequate maintenance, dilapidation, or abandonment;

(7) A structure that has become vacant, dilapidated, and open at door or window, leaving the interior of the structure exposed to the elements or accessible to entrance by trespassers or animals or open to casual entry;

(8) A structure that has settled to such an extent that walls or other structural portions have less resistance to winds than is required in the case of new construction by this Code;

(9) A structure that has been damaged by fire, wind, flood, or by any other cause to such an extent as to be dangerous to the life, safety, health, or general welfare of the people living in the city;

(10) A structure that has become damaged to such an extent that the cost of repair to place it in a safe, sound, and sanitary condition exceeds 50 percent of the assessed valuation of the structure, at the time when repairs are to be made.

[4] BCO § 18-47 provides, "It shall be unlawful for an owner or agent to maintain or occupy an unsafe structure."

[5] Plaintiffs did not demolish the structures as required and were thus ordered to show cause as to their failure to comply with the city council's decision in accordance with BCO § 18-58. At the show cause hearing, the city council determined that cause had not been shown to prevent demolition and again ordered demolition. To date, demolition has not occurred.

against the City, alleging violations of due process, generally, as well as substantive due process; a violation of equal protection; inverse condemnation or a regulatory taking; contempt of court; common-law and statutory slander of title; and a violation of Michigan housing laws under MCL 125.540.[7] The City subsequently filed its own complaint against plaintiffs in a separate action, requesting injunctive relief in the form of an order enforcing BCO § 18-59 and requiring demolition of the structures.

After consolidating these cases, the circuit court denied the City's request for injunctive relief and likewise denied relief to plaintiffs on several of the theories they had advanced. However, the circuit court did address the constitutionality of the ordinance, determining that, on its face, BCO § 18-59 violates substantive due process by permitting the City to order an unsafe structure to be demolished as a public nuisance without providing the owner the option to repair it when the structure is deemed unreasonable to repair as defined under the ordinance. The circuit court thus granted plaintiffs' renewed motion for partial summary disposition under MCR 2.116(C)(10) on the substantive due process claim and thereafter denied reconsideration.[8]

---

[6] Specifically, this ordinance provides that "[a]n owner aggrieved by a final decision of the city council may appeal the decision to the county circuit court by filing a complaint within 20 calendar days from the date of the decision."

[7] Though plaintiffs clearly alleged a substantive due process violation under Count II of their complaint, they did not expressly state a procedural due process claim given that Count I simply alleges a violation of "due process rights." However, because the Court of Appeals addressed the procedural due process component, and our grant order directed the parties to brief both substantive and procedural due process, we will address both claims.

[8] The circuit court did not rule on the procedural due process issue.

7

After granting the City's application for leave to appeal, the Court of Appeals affirmed the circuit court in a split published opinion.[9] The majority concluded that the standard set forth under BCO § 18-59 is arbitrary and unreasonable, and thus violates substantive due process, because it

> only allow[s] the exercise of an option to repair when a property owner overcomes or rebuts the presumption of economic unreasonableness, regardless of whether the property owner is otherwise willing and able to timely make the necessary repairs.[10]

The majority also determined that BCO § 18-59 does not bear a reasonable relationship to the permissible legislative objective of protecting citizens from unsafe and dangerous structures because demolition does not advance the objective of abating nuisances and protecting citizens to a greater degree than repairs, even ones more costly than the present value of the structure and that an owner is willing and able to timely finance. Accordingly, the majority held that BCO § 18-59 is facially unconstitutional. Finally, notwithstanding the circuit court's abstention from reaching the procedural due process issue, the majority went on to conclude that BCO § 18-59 likewise violates procedural due process because "the only way the city's ordinances could withstand a procedural due process challenge" would be if it provides a property owner with the option to repair the structure.[11]

---

[9] *Bonner v City of Brighton*, 298 Mich App 693; 828 NW2d 408 (2012).

[10] *Id*. at 731.

[11] *Id*. at 717.

8

We granted the City's application for leave to appeal, directing the parties to brief separately "whether § 18-59 is facially unconstitutional on the basis that the ordinance violates: (1) substantive due process; and/or (2) procedural due process."[12]

## II. STANDARD OF REVIEW

This case implicates myriad standards of review. The circuit court granted plaintiff's motion for partial summary disposition pursuant to MCR 2.116(C)(10). We review de novo a circuit court's decision on a motion for summary disposition.[13] Summary disposition is appropriate under MCR 2.116(C)(10) if, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law."[14] "A genuine issue of material fact exists when, viewing the evidence in a light most favorable to the nonmoving party, the record which might be developed . . . would leave open an issue upon which reasonable minds might differ."[15] In deciding whether to grant a motion for summary disposition pursuant to MCR 2.116(C)(10), a court must consider "[t]he affidavits, together with the pleadings, depositions, admissions, and documentary

---

[12] *Bonner v City of Brighton*, 494 Mich 873 (2013).

[13] *Debano-Griffin v Lake Co*, 493 Mich 167, 175; 828 NW2d 634 (2013).

[14] MCR 2.116(C)(10).

[15] *Debano-Griffin*, 493 Mich at 175 (citation omitted).

9

evidence then filed in the action or submitted by the parties,"[16] in the light most favorable to the nonmoving party.[17]

This dispute also concerns the constitutionality of a municipal ordinance, which necessarily involves the interpretation and application of the ordinance itself. We review de novo questions of constitutional law;[18] however, this Court accords deference to a deliberate act of a legislative body, and does not inquire into the wisdom of its legislation.[19] The decision to declare a legislative act unconstitutional should be approached with extreme circumspection and trepidation, and should never result in the formulation of a rule of constitutional law "broader than that demanded by the particular facts of the case rendering such a pronouncement necessary."[20] "Every reasonable presumption or intendment must be indulged in favor of the validity of the act, and it is only when invalidity appears so clearly as to leave no room for reasonable doubt that it violates some provision of the Constitution that a court will refuse to sustain its validity."[21]

---

[16] MCR 2.116(G)(5).

[17] *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996),

[18] *Elba Twp v Gratiot Co Drain Comm'r*, 493 Mich 265, 277; 831 NW2d 204 (2013).

[19] *Dearborn Twp v Dail*, 334 Mich 673, 680; 55 NW2d 201 (1952).

[20] *Council of Orgs & Others for Ed About Parochiaid, Inc v Governor*, 455 Mich 557, 568; 566 NW2d 208 (1997), citing *United States v Raines*, 362 US 17, 21; 80 S Ct 519; 4 L Ed 2d 524 (1960).

[21] *Cady v Detroit*, 289 Mich 499, 505; 286 NW 805 (1939).

Further, because ordinances are treated as statutes for purposes of interpretation and review, we also review de novo the interpretation and application of a municipal ordinance.[22] Since the rules governing statutory interpretation apply with equal force to a municipal ordinance,[23] the goal of construction and interpretation of an ordinance is to discern and give effect to the intent of the legislative body.[24] The most reliable evidence of that intent is the language of the ordinance itself and, therefore, the words used in an ordinance must be given their plain and ordinary meanings.[25]

## III. ANALYSIS

Plaintiffs make two facial constitutional attacks upon BCO § 18-59. First, they assert that the ordinance violates substantive due process by permitting demolition of an unsafe structure without extending to its owner an option to repair, because denying a property owner the chance to repair an unsafe structure does not advance the City's otherwise legitimate interest in protecting the health, safety, and welfare of the Brighton citizenry. Second, plaintiffs argue that the ordinance violates procedural due process by failing to provide a procedure to safeguard a property owner's right to choose whether to repair a structure municipally deemed unsafe before the City orders it demolished. We will address plaintiffs' arguments in this order; before proceeding further, however, we find it necessary to make two critical observations.

---

[22] *Soupal v Shady View, Inc*, 469 Mich 458, 462; 672 NW2d 171 (2003).

[23] *Macenas v Village of Michiana*, 433 Mich 380, 396, 446 NW2d 102 (1989).

[24] *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999).

[25] *Klooster v City of Charlevoix*, 488 Mich 289, 296; 795 NW2d 578 (2011).

First, we emphasize that this is a *facial* challenge to BCO § 18-59;[26] plaintiffs do not challenge the ordinance's application in a particular instance.[27]  A party challenging the facial constitutionality of an ordinance "faces an extremely rigorous standard."[28]  To prevail, plaintiffs must establish that " 'no set of circumstances exists under which the [ordinance] would be valid' " and " '[t]he fact that the . . . [ordinance] might operate unconstitutionally under some conceivable set of circumstances is insufficient' " to render it invalid.[29]  Indeed, " 'if any state of facts reasonably can be conceived that would sustain [the ordinance], the existence of the state of facts at the time the law was enacted must be assumed' " and the ordinance upheld.[30]  Finally, because facial attacks, by their nature, are not dependent on the facts surrounding any particular decision, the specific facts surrounding plaintiffs' claim are inapposite.[31]

---

[26] A facial challenge alleges that an ordinance is unconstitutional "on its face" because "[t]o make a successful facial challenge to the constitutionality of a statute, the challenger must establish that no set of circumstances exists under which the act would be valid." *Judicial Attorneys Ass'n v Michigan*, 459 Mich 291, 303; 586 NW2d 894 (1998) (citations and quotation marks omitted).

[27] An as-applied challenge, to be distinguished from a facial challenge, alleges "a present infringement or denial of a specific right or of a particular injury in process of actual execution" of government action. *Village of Euclid, Ohio v Amber Realty Co*, 272 US 365, 395; 47 S Ct 114; 71 L Ed 303 (1926).

[28] *Judicial Attorneys Ass'n v Michigan*, 459 Mich at 310.

[29] *Council of Orgs*, 455 Mich at 568, quoting *United States v Salerno*, 481 US 739, 745; 107 S Ct 2095; 95 L Ed 2d 697 (1987).

[30] *Council of Orgs*, 455 Mich at 568-569, quoting 16 Am Jur 2d, Constitutional Law, § 218, p 642.

[31] *City of Lakewood v Plain Dealer Pub Co*, 486 US 750, 770 n 11; 108 S Ct 2138; 100 L Ed 2d 771 (1988).

Second, and particularly noteworthy here, we emphasize that analysis of substantive and procedural due process involves two separate legal tests. While the touchstone of due process, generally, "is protection of the individual against arbitrary action of government,"[32] the substantive component protects against the arbitrary exercise of governmental power,[33] whereas the procedural component is fittingly aimed at ensuring constitutionally sufficient procedures for the protection of life, liberty, and property interests.[34] As evidenced by the following statement, the Court of Appeals made clear its misunderstanding of these distinct constitutional claims when it concluded that BCO § 18-59 was facially unconstitutional:

> Ultimately, we conclude that the ordinance infringes on plaintiffs' due process rights, whether denominated procedural or substantive, thereby *making it unnecessary to determine which due process principle is actually embodied in plaintiffs' argument*.[35]

As a result, the Court of Appeals conflated what previous decisions have indicated should be treated as separate inquiries. Indeed, the issue whether BCO § 18-59 is facially

---

[32] *Wolff v McDonnell*, 418 US 539, 558; 94 S Ct 2963; 41 L Ed 2d 935 (1974).

[33] *Daniels v Williams*, 474 US 327, 331; 106 S Ct 662; 88 L Ed 2d 662 (1986) (the substantive due process guarantee prevents governmental power from being oppressively exercised).

[34] *Hannah v Larche*, 363 US 420; 80 S Ct 1502; 4 L Ed 2d 1307 (1960) (the procedural due process guarantee requires that an individual must be accorded certain procedures before a protected interest is infringed, including notice of the proceedings against him, a meaningful opportunity to be heard, as well as the assurance that the matter will be conducted in an impartial manner); *Wolff*, 418 US 539; *Mathews v Eldridge*, 424 US 319; 96 S Ct 893; 47 L Ed 2d 18 (1976).

[35] *Bonner*, 298 Mich App at 710 (emphasis added).

unconstitutional for denying property owners the opportunity to repair unsafe structures in violation of substantive due process is distinct from the issue whether the ordinance is facially unconstitutional for permitting the demolition of unsafe structures without providing adequate procedural safeguards in violation of the right to procedural due process. By melding together plaintiffs' substantive and procedural due process claims, the Court of Appeals failed to observe that distinction and thus examine these claims in light of the correct legal standards. We therefore take this opportunity to clarify that alleged violations of substantive and procedural due process must be separately analyzed in order to determine whether the specific dictates of due process have been satisfied.

## A. GENERAL DUE PROCESS PRINCIPLES

### 1. LEGAL FRAMEWORK

The federal due process provision guarantees that no person shall be deprived of "life, liberty, or property, without due process of law."[36] Prior caselaw has interpreted this language to "guarante[e] more than fair process,"[37] but to encompass a substantive sphere as well, "barring certain government actions regardless of the fairness of the procedures used to implement them."[38] Determining whether the ordinance in this case violates due process requires that we engage in several inquiries, the first and most essential of which asks whether the interest allegedly infringed by the challenged government action—here, a property owner's interest in repairing an unsafe structure—

---

[36] US Const, Am XIV.

[37] *Washington v Glucksberg*, 521 US 702, 719, 117 S Ct 2258; 138 L Ed 2d 772 (1997).

[38] *Daniels*, 474 US at 331.

comes within the definition of "life, liberty or property."[39]  If it does not, the Due Process Clause affords no protection.  If, however, a life, liberty or property interest is found to exist and to be threatened by the City's conduct, the next two queries will address what process is due before the government can interfere with that interest.  Because the Due Process Clause offers two separate types of protections—substantive and procedural—separate inquiries must examine whether these protections have been provided.

## 2.  APPLICATION

Plaintiffs allege that their property rights have been violated by the City's decision to order their structures demolished without providing them with the option to repair the structures.  Explicit in our state and federal caselaw is the recognition that an individual's vested interest in the use and possession of real estate is a property interest protected by due process.[40]  Accordingly, plaintiffs, as owners of the three structures at issue and the land on which those structures are situated, have a significant property interest within the protection of the Due Process Clause.

## B.  SUBSTANTIVE DUE PROCESS

### 1.  LEGAL FRAMEWORK

Having identified a significant property interest protected by the Due Process Clause, we continue our analysis by addressing plaintiffs' substantive due process claim.

---

[39] *Ingraham v Wright*, 430 US 651; 97 S Ct 1401; 51 L Ed 2d 711 (1977).

[40] See, e.g., *Dow v Michigan*, 396 Mich 192, 204; 240 NW2d 450 (1976); *Bd of Regents of State Colleges v Roth*, 408 US 564, 571-572; 92 S Ct 2701; 33 L Ed 2d 548 (1972) (The "actual owner[] . . . of real estate, chattels or money" has "property interests protected by procedural due process").

" 'Substantive due process' analysis must begin with a careful description of the asserted right,"[41] for there has "always been reluctan[ce] to expand the concept of substantive due process" given that "[t]he doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field."[42] Where the right asserted is not fundamental, the government's interference with that right need only be reasonably related to a legitimate governmental interest.[43]

A zoning ordinance must similarly stand the test of reasonableness—that it is " 'reasonably necessary for the preservation of public health, morals, or safety' "[44]—and, as we have stated, it is presumed to be so until the plaintiff demonstrates otherwise.

---

[41] *Reno v Flores*, 507 US 292, 302; 113 S Ct 1439; 123 L Ed 2d 1 (1993).

[42] *Collins v City of Harker Hts*, 503 US 115, 125; 112 S Ct 1061; 117 L Ed 2d 261 (1992). See also *Albright v Oliver*, 510 US 266, 272; 114 S Ct 807; 127 L Ed 2d 114 (1994).

[43] *TIG Ins Co, Inc v Dep't of Treasury*, 464 Mich 548, 557-558; 629 NW2d 402 (2001). Discussing the parameters of this standard, this Court in *TIG* stated:

> "Rational basis review does not test the wisdom, need, or appropriateness of the legislation, or whether the classification is made with 'mathematical nicety,' or even whether it results in some inequity when put into practice." *Crego v Coleman*, 463 Mich 248, 260; 615 NW2d 218 (2000). Rather, it tests only whether the legislation is reasonably related to a legitimate governmental purpose. The legislation will pass "constitutional muster if the legislative judgment is supported by any set of facts, either known or which could reasonably be assumed, even if such facts may be debatable." *Id*. at 259-260. To prevail under this standard, a party challenging a statute must overcome the presumption that the statute is constitutional. *Thoman v Lansing*, 315 Mich 566, 576; 24 NW2d 213 (1946). [*TIG Ins Co*, 464 Mich at 557-558.]

[44] *City of North Muskegon v Miller*, 249 Mich 52, 58; 227 NW 743 (1929).

16

Accordingly, a plaintiff may successfully challenge a local ordinance on substantive due process grounds, and therefore overcome the presumption of reasonableness, by proving either "that there is no reasonable governmental interest being advanced by the present zoning classification itself . . . or, secondly, that an ordinance [is] unreasonable because of the purely arbitrary, capricious and unfounded exclusion of other types of legitimate land use from the area in question."[45] The reasonableness of the ordinance thus becomes the test of its legality.[46]

## 2. APPLICATION

Mindful of these principles, we begin by describing the right asserted by plaintiffs. Plaintiffs are not generally arguing that they have a categorical right of property use or possession, but assert a much more limited constitutional right; namely, that encompassed within the Due Process Clause's protection of property is a property owner's right to repair a structure municipally deemed "unsafe" before that structure can be demolished. However, we are unaware of any court that has ever granted a property owner the fundamental right of an absolute repair option involving property that has fallen into such disrepair as to create a risk to the health and safety of the public. Indeed, that conclusion would hardly be compatible with the line of cases in which this Court and the United States Supreme Court have held that reasonableness is essential to the validity of an exercise of police power affecting the general rights of the land owner by restricting

---

[45] *Kropf v Sterling Hts*, 391 Mich 139, 158; 215 NW2d 179 (1974).

[46] *Moreland v Armstrong*, 297 Mich 32, 35; 297 NW 60 (1941).

the character of the owner's use,[47] which would include the opportunity to repair unsafe structures. The right asserted by plaintiffs, then, cannot be considered fundamental. Therefore, to demonstrate a violation on substantive due process grounds, plaintiffs have the burden of showing that the unreasonable-to-repair presumption set forth in BCO § 18-59 does not bear any reasonable relationship to a legitimate governmental interest.

BCO § 18-59 was enacted pursuant to the City's police powers, and its purpose is to abate a public nuisance by requiring repairs or demolition of unsafe structures. It is firmly established that nuisance abatement, as a means to promoting public health, safety, and welfare, is a legitimate exercise of police power[48] and that demolition is a permissible method of achieving that end.[49] Certainly, then, there can be no dispute that the public interest that BCO § 18-59 is intended to serve—protecting the health and welfare of the citizens of Brighton by eliminating the hazards posed by dangerous and

---

[47] See *City of North Muskegon*, 249 Mich 52; *Moreland*, 297 Mich 32; *Pere Marquette R Co v Muskegon Twp Bd*, 298 Mich 31; 298 NW 393; *Pringle v Shevnock*, 309 Mich 179; 14 NW2d 827 (1944); *Hammond v Bloomfield Hills Bldg Inspector*, 331 Mich 551; 50 NW2d 155 (1951); *Fenner v City of Muskegon*, 331 Mich 732; 50 NW2d 210 (1951); *Anchor Steel & Conveyor Co v City of Dearborn*, 342 Mich 361; 70 NW2d 753 (1955); *Detroit Edison Co v City of Wixom*, 382 Mich 673; 172 NW2d 382 (1969); *Kropf*, 391 Mich 139; *Bevan v Brandon Twp*, 438 Mich 385; 475 NW2d 37 (1991). See also *Village of Belle Terre v Boraas*, 416 US 1; 94; S Ct 1536; 39 L Ed 2d 1536 (1974); *Williamson v Lee Optical of Oklahoma*, 348 US 483; 75 S Ct 461; 99 L Ed 563 (1955); *Penn Central Transp Co v City of New York*, 438 US 104; 98 S Ct 2646; 57 L Ed 2d 631 (1978); *Schad v Borough of Mount Ephraim*, 452 US 61; 101 S Ct 2176; 68 L Ed 2d 671 (1981); *Reno*, 507 US 292.

[48] *Austin v Tennessee*, 179 US 343, 349; 21 S Ct 132; 45 L Ed 224 (1900).

[49] See MCL 125.486.

unsafe structures—is a legitimate one. What is in dispute, however, is whether the unreasonable-to-repair presumption bears a reasonable relationship to that interest.

The Court of Appeals found it did not. In the Court of Appeals' view, to refuse a willing and able property owner the option to repair property that has been deemed unsafe because of the City's view of the unreasonableness of the cost does no more to advance this permissible legislative objective than does allowing corrective repairs to be made in the first instance. In our view, however, if permitting demolition of unsafe structures (notwithstanding the willingness and financial ability of property owners to undertake corrective repairs) is not unconstitutional in itself, it does not become so simply because it is shown to be less desirable than some other action. While affording a property owner the opportunity to perform corrective repairs is one method by which the dangers posed by an unsafe structure may be remedied, it is by no means the only method—much less the only *constitutional* method—of doing so. As long as certain minimum standards have been met, and the ordinance does not encroach upon a property owner's fundamental rights, the decision to exceed those standards by providing a property owner with an automatic right of repair, as some municipalities have chosen to do, is a policy judgment, not a constitutional mandate.[50]

---

[50] That the City's legitimate interest in protecting its citizens from unsafe and dangerous structures might be equally advanced by demolition and by repairing the property at issue does not sever the reasonableness between BCO § 18-59 and the City's permissible legislative objective. To affirm the lower courts' conclusion to the contrary would appear to subject the City's demolition process to heightened scrutiny by requiring that BCO § 18-59 be narrowly tailored to minimize the denial of a repair option. Of course, narrow tailoring is not required here because fundamental rights are not involved.

19

Indeed, to satisfy substantive due process, the infringement of an interest that is less than fundamental, such as the right asserted here, requires no more than a reasonable relationship between the governmental purpose and the means chosen to advance that purpose. This standard allows a municipal body sufficient latitude to decide, as the City has, that certain considerations favor using one means, i.e., demolition, rather than another, i.e., repairing. Enacting an ordinance that presumes repairs will be unreasonable to undertake if the cost of those repairs exceeds 100 percent of the property's value before it became unsafe protects children and others from the risk of increased injury, reduces the opportunity for crime, and aids in the maintenance of property values and marketability of lands. Any one of these purposes is reasonably related to the City's interest in promoting the health, safety, and welfare of its citizens and it is presumed that the City acted for such reasons, or for any other valid reason, in enacting BCO § 18-59.

Without question, property owners have a constitutional right of property use, but this does not translate into an absolute constitutional right to repair unsafe structures. Moreover, even assuming that plaintiffs had a protected interest in repairing the unsafe structures at issue here before that property could be subject to demolition,[51] BCO § 18-59 is reasonably related to several governmental interests, and thus did not facially violate substantive due process. Accordingly, plaintiffs' asserted private right of repair

---

[51] For a property interest to be protected pursuant to the Due Process Clause, a claimant must have "a legitimate claim of entitlement" to the property interest, not simply "a unilateral expectation of it." *Williams v Hofley Mfg Co*, 430 Mich 603, 610; 424 NW2d 278 (1988), quoting *Roth*, 408 US at 577.

20

must yield to the City's higher governmental interest in protecting the health, safety, and welfare of its citizens, and the Court of Appeals erred in concluding otherwise.[52]

Nor have plaintiffs shown that BCO § 18-59 violates their substantive due process rights as an arbitrary and unreasonable restriction on plaintiffs' constitutionally recognized property interests. Under this standard, a presumption still prevails in favor of the reasonableness and validity in all particulars of a municipal ordinance, unless plaintiffs can show that the unreasonable-to-repair-presumption constitutes " 'an arbitrary

---

[52] The Court of Appeals' reliance on several nonbinding decisions from other jurisdictions for their "general due process analys[e]s," *Bonner*, 298 Mich App at 727, provides nominal, if any, support for its holding that BCO § 18-59, on its face, violates due process. Indeed, both *Horton v Gulledge*, 277 NC 353, 360; 177 SE2d 885 (1970), overruled in part on other grounds by *State v Jones*, 305 NC 520; 290 SE2d 675 (1982), and *Johnson v City of Paducah*, 512 SW2d 514, 516 (Ky, 1974), involve as-applied challenges, not facial challenges. Nor do the cases relied on by the Court of Appeals assist us in resolving the specific inquiry whether BCO § 18-59 is facially violative of substantive due process, since *Horton*, 277 NC 353, *Horne v City of Cordele*, 140 Ga App 127; 230 SE2d 333 (1976), *Herrit v Code Mgmt Appeal Bd of City of Butler*, 704 A2d 186 (1997), and *Washington v City of Winchester*, 861 SW2d 125 (Ky App, 1993), do not specifically consider a local demolition ordinance in the context of substantive due process.

Furthermore, *Horton*, *Herrit*, and *Horne* all involve takings claims, and, unlike the rebuttable unreasonable-to-repair presumption in BCO § 18-59, the ordinances at issue in both *Horton* and *Johnson* were held unconstitutional on the basis that they *required* demolition if the cost to repair an unsafe structure exceeded a certain no-repair cost threshold. In contrast, nothing in BCO § 18-59 expressly provides that the unreasonable-to-repair presumption is irrebuttable. Indeed, had the legislative body intended to make demolition the unavoidable result upon incidence of the unreasonable-to-repair presumption, it certainly could have drafted BCO § 18-59 to make that result explicit. However, under the plain language of the ordinance, demolition is permissive. Consequently, to read BCO § 18-59 as creating an irrebuttable presumption would impermissibly render a portion of the ordinance surplusage in violation of the rules of statutory construction. See *Pittsfield Charter Twp v Washtenaw Co*, 468 Mich 702, 714; 664 NW2d 193 (2003).

fiat, a whimsical ipse dixit,' " leaving " 'no room for a legitimate difference of opinion concerning its reasonableness.' "[53]

Plaintiffs argue, and the Court of Appeals agreed, that the unreasonable-to-repair presumption in BCO § 18-59 can only be overcome upon a showing of economic reasonableness, i.e., that repair costs would not exceed "100 percent of the true cash value of the structure as reflected on the city assessment tax rolls prior to the building becoming an unsafe structure." There is, however, no textual support for this interpretation because BCO § 18-59 does not specify the manner in which the unreasonable-to-repair presumption may be overcome. A showing of reasonableness could therefore be established by presenting a viable repair plan; evidence from the challenger's own experts that, contrary to the City's estimates, the repair costs would not exceed 100 percent of the property value; or evidence that the structure subject to demolition has some sort of cultural, historical, familial, or artistic value. Because reasonableness can be established in economic or noneconomic terms, plaintiffs have failed to show, and the Court of Appeals erred by concluding, that BCO § 18-59 is arbitrary and unreasonable because "it denies a property owner the option to repair an unsafe structure simply on the basis that the city deems repair efforts to be economically unreasonable."[54]

Again, even assuming that there is a protected property interest in repairing an unsafe structure, plaintiffs have failed to demonstrate that BCO § 18-59 arbitrarily or

---

[53] *Brae Burn, Inc v Bloomfield Hills*, 350 Mich 425, 432; 86 NW2d 166 (1957).

[54] *Bonner*, 298 Mich App at 714.

unreasonably infringes that right by denying a property owner an option to repair as a matter of right. The unreasonable-to-repair presumption in BCO § 18-59 is not arbitrary because it does not represent a total prohibition on a property owner's opportunity to repair an unsafe structure, and the ordinance applies uniformly to all structures that have repair costs in excess of 100 percent of the structure's value before it became unsafe, except those structures that BCO § 18-59 expressly exempts.[55] Nor is the ordinance unreasonable merely because there exists an arguably preferred method of addressing the legislative objective sought to be attained, or because the prohibited land use is just as reasonable as the one permitted or required under the ordinance. Certainly, a variety of permissible land uses may be excluded or restricted by local ordinance provided the ordinance is reasonable, and we do not concern ourselves with the wisdom or desirability of such legislation. Furthermore, even if the relationship between BCO § 18-59 and the City's interest in promoting the public health, safety, and welfare is debatable, we need more than a mere difference of opinion to establish a substantive due process violation, and plaintiffs have failed to make such a showing. Accordingly, the presumption of constitutionality favors the ordinance's validity, and we may not second-guess the City's policy judgment in enacting it.

We find nothing arbitrary or unreasonable about the City's interest in demolishing unsafe structures and believe the means selected—the unreasonable-to-repair presumption in BCO § 18-59—bears a reasonable relationship to the objective sought to

---

[55] These include a structure that became unsafe as a result of an event beyond the owner's control, including, but not limited to, fire, windstorm, tornado, flood, or other act of God.

be attained.  Because plaintiffs have failed to satisfy the burden necessary to invalidate BCO § 18-59 on substantive due process grounds, it must be sustained.

## C.  PROCEDURAL DUE PROCESS
### 1.  LEGAL FRAMEWORK

We turn now from the claim that the City may not, by virtue of BCO § 18-59, deprive plaintiffs of their asserted property interest without first affording them the opportunity to repair a structure deemed unsafe by the City, to plaintiffs' procedural due process claim that the City may not order demolition on the basis of the procedures BCO § 18-59 provides.  Well established is the assurance that deprivation of a significant property interest cannot occur except by due process of law.[56]  While the meaning of the Due Process Clause and the extent to which due process must be afforded has been the subject of many disputes, there can be no question that, at a minimum, due process of law requires that deprivation of life, liberty, or property by adjudication must be preceded by notice and an opportunity to be heard.[57]  To comport with these procedural safeguards, the opportunity to be heard "must be granted at a meaningful time and in a meaningful manner."[58]  As recognized by the U.S. Supreme Court,

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be

---

[56] See *Cleveland Bd of Ed v Loudermill*, 470 US 532, 538; 105 S Ct 1487; 84 L Ed 2d 494 (1985).

[57] *Mullane v Central Hanover Bank & Trust Co*, 339 US 306, 313; 70 S Ct 652; 94 L Ed 865 (1950).

[58] *Armstrong v Manzo*, 380 US 545, 552; 85 S Ct 1187; 14 L Ed 2d 62 (1965).

24

affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[59]

## 2. APPLICATION

To determine whether BCO § 18-59 provides property owners the process to which they are constitutionally entitled, we first review in some detail the procedures the City has employed through this ordinance. The City's demolition process ordinarily begins with an inspection of a particular structure followed by a determination by the city manager, or some other agent designated by the City, that the structure is unsafe pursuant to any one or more of the ten factors delineated in BCO § 18-46 and is, therefore, subject to demolition. This determination triggers BCO § 18-59, which requires that the city manager, or the city manager's designee, determine the cost to repair the structure and compare that cost to the structure's true cash value as reflected in assessment tax rolls before the structure became unsafe. If the cost to repair exceeds the structure's true cash value, then the structure is presumed to be a public nuisance subject to demolition. If not, the structure remains in its unsafe condition but may not, at this point, be subject to demolition. In either case, the city manager must then serve the structure's owner with written notice pursuant to BCO § 18-52.[60] If the city manager has determined that the

---

[59] *Mathews*, 424 US at 334-335. See also *Goldberg v Kelly*, 397 US 254, 263-271; 90 S Ct 1011; 25 L Ed 2d 287 (1970).

[60] BCO § 18-52(c) prescribes the specific notice contents and provides in its entirety:

The notice shall:

structure at issue can be made safe, the notice must identify the required repairs and improvements with which the property owner must comply within a reasonable time or face demolition. However, if, as in this case, the city manager determines that the structure cannot be made safe, the notice must indicate that demolition will ensue. Moreover, following either determination, the notice must inform the property owner of the right to appeal the city manager's determination to the city council pursuant to BCO § 18-61. Within ten calendar days of receipt of this notice, the property owner must notify the City of his or her intent to accept or reject the terms of the notice.

If the owner rejects the terms of the notice and submits a written appeal that "state[s] the basis for the appeal," "[t]he owner or his agent shall have an opportunity to

---

(1) Be in writing;

(2) Include a description of the real estate sufficient for identification;

(3) Specify the repairs and improvements required to be made to render the structure safe or if the city manager, or his designee, has determined that the structure cannot be made safe, indicate that the structure is to be demolished;

(4) Specify a reasonable time within which the repairs and improvements must be made or the structure must be demolished;

(5) Include an explanation of the right to appeal the decision to the city council within ten calendar days of receipt of the notice in accordance with section 18-61;

(6) Include a statement that the recipient of the notice must notify the city manager within ten calendar days of receipt of the notice of his intent to accept or reject the terms of the notice.

be heard by the city council at a regularly scheduled council meeting."[61]  The city council then has the discretion to "affirm, modify, or reverse all or part of the determination of the city manager, or his designee."[62]  If the owner receives an adverse final decision from the city council, the owner "may appeal th[at] decision to the county circuit court by filing a complaint within 20 calendar days from the date of the decision."[63]

Because this is a facial constitutional challenge, plaintiffs do not argue that the City failed to properly execute or enforce this procedural system.[64]  Instead, plaintiffs contend that the City's procedural system results in an unconstitutional deprivation of a property interest absent due process of law because it fails to give the owner of an unsafe structure the procedural protection of a repair option before that property may be demolished.  Because this argument is simply the substantive due process argument recast in procedural due process terms, the argument meets with the same fate.

Nevertheless, the Court of Appeals determined that although BCO § 18-61 comports with procedural due process to the extent that it provides notice, a hearing, and a decision by an impartial decision-maker, "the [C]ity should have also provided for a reasonable opportunity to repair the unsafe structure" in order for the ordinance to pass

---

[61] BCO § 18-61.

[62] *Id.*

[63] BCO § 18-63.

[64]  In any event, however, there is no question that the building official made a determination that the structures at issue were unsafe and that it was unreasonable to repair them, that he served plaintiffs with written notice of these determinations, and that the notice included the requisite contents.

constitutional scrutiny.[65]  We disagree.  At least as it pertains to this facial challenge, due process was satisfied by giving plaintiffs the right to an appeal before the city council and the opportunity to appeal that decision to the circuit court.

The essence of due process is the requirement that "a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it."[66]  All that is necessary, then, is that the procedures at issue be tailored to "the capacities and circumstances of those who are to be heard"[67] to ensure that they are given a meaningful opportunity to present their case, which must generally occur before they are permanently deprived of the significant interest at stake.[68]  Here, there is no dispute that if the city manager orders a structure to be demolished under BCO § 18-59, aggrieved parties, such as plaintiffs, have the right to appeal that determination to the city council under BCO § 18-61.  Although BCO § 18-59 creates a presumption that an unsafe structure shall be demolished as a public nuisance if the cost to repair the structure would exceed 100 percent of the structure's true cash value as reflected in the assessment tax rolls before the structure became unsafe, this presumption is rebuttable.  To rebut this presumption and avoid demolition, the aggrieved party need only show that the repair is reasonable, a showing that may be achieved by economic or noneconomic means.  It is then within the

---

[65] *Bonner*, 298 Mich App at 716.

[66] *Joint Anti-Fascist Refugee Comm v McGrath*, 341 US 123, 171-172; 71 S Ct 624; 95 L Ed 817 (1951) (Frankfurter, J., concurring).

[67] *Goldberg v Kelly*, 397 US at 268-269.

[68] See *Loudermill*, 470 US at 542.

28

city council's discretion to "affirm, modify, or reverse all or part of the determination of the city manager, or his designee."[69] When the city council decides, as it did here, to affirm the determination of the building official based on the evidence before it, that adverse ruling does not render an aggrieved party's opportunity to be heard any less meaningful. To the contrary, it shows that the procedures in place are sufficient to provide property owners with notice and a meaningful opportunity to be heard.

Furthermore, vital to the assessment of what process is due in this case is the tenet that substantial weight must be given to the procedures provided for by those individuals holding legislative office—including members of a city council with whom the electorate has entrusted the duty of protecting the health and safety of all citizens—for "[i]t is too well settled to require citation that a statute must be treated with the deference due to a deliberate action of a coordinate branch of our State government. . . ."[70] This is especially so where, as here, in addition to providing the aggrieved party with an effective process for asserting his or her claim before any demolition, the prescribed procedures also ensure the right to a hearing, as well as to subsequent judicial review,

---

[69] BCO § 18-61. As previously noted, if the city manager determines that a structure is "unsafe" and that the costs to repair that structure would exceed 100 percent of the structure's pre-deteriorated true cash value, it will be presumed under BCO § 18-59 that such repairs are *unreasonable*. The appeal to the city council afforded by BCO § 18-61 is thus the property owner's opportunity to rebut the unreasonable-to-repair presumption by showing that repairs are *reasonable*. Clearly, then, the same reasonableness standard necessary to rebut the unreasonable-to-repair presumption applicable to BCO § 18-59 also applies to an appeal before the city council pursuant to BCO § 18-61.

[70] *Dearborn Twp v Dail*, 334 Mich at 680.

before the denial of the aggrieved party's claim becomes final.[71]  For these reasons, we conclude that plaintiffs have failed to demonstrate a facial procedural due process violation where they received all the process to which they were constitutionally entitled. Accordingly, the Court of Appeals reversibly erred by holding to the contrary.  We therefore conclude that affording a property owner an option to repair as a matter of right is not required before the demolition of an unsafe structure and, furthermore, existing procedures in BCO § 18-59 comport entirely with due process.

## IV.  CONCLUSION

The Court of Appeals erroneously determined that BCO § 18-59 is facially violative of due process.  BCO § 18-59 does not, on its face, deprive plaintiffs of substantive due process when the ordinance's unreasonable-to-repair presumption is reasonably related to the City's interest in protecting the health, safety, and general welfare of its citizens from unsafe or dangerous structures.  Furthermore, the presumption set forth in BCO § 18-59 is neither arbitrary nor unreasonable because there are circumstances under which the presumption could be overcome and repairs permitted.

---

[71] To this end, plaintiffs further contend that the appellate process was constitutionally deficient because plaintiffs did not receive a decision from an impartial decision-maker given that, according to plaintiffs, the city council is part of the same group that enacted the ordinance in the first place.  We reject this argument for the simple reason that it overlooks the fact that a city council is authorized to exercise legislative and administrative functions and that the administrative function may include quasi-judicial powers.  See, e.g., *Babcock v Grand Rapids*, 308 Mich 412, 413; 14 NW2d 48 (1944); *Prawdzik v Grand Rapids*, 313 Mich 376, 390-391; 21 NW2d 168 (1946); and *In re Payne*, 444 Mich 679, 708, 720; 514 NW2d 121 (1994).  Plaintiffs' bare assertion that the city council is somehow not impartial is therefore untenable.

Nor does § 18-59, on its face, deprive plaintiffs of procedural due process. BCO § 18-61 affords an aggrieved party notice and a meaningful opportunity to present evidence to rebut the unreasonable-to-repair presumption in BCO § 18-59 before an impartial decision-maker, and plaintiffs have not satisfied their burden of showing that they are constitutionally entitled to further processes in order to satisfy due process requirements. We therefore reverse the decision of the Court of Appeals and remand this case to the Livingston Circuit Court for further proceedings consistent with this opinion.

Mary Beth Kelly
Robert P. Young, Jr.
Michael F. Cavanagh
Stephen J. Markman
Brian K. Zahra
Bridget M. McCormack
David F. Viviano