*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RAO,

                Petitioner-Appellee,

v

TWO,

                Respondent-Appellant.

UNPUBLISHED
October 15, 2024
1:25 PM

No. 366528
Ottawa Circuit Court
LC No. 22-099508-PP

Before: SWARTZLE, P.J. and REDFORD and FEENEY, JJ.

PER CURIAM.

Petitioner obtained a personal protection order (PPO) against her ex-husband. Respondent moved to terminate the PPO, and the circuit court denied respondent's motion after a hearing. We affirm.

Petitioner and respondent were previously married and share three children. Their March 2022 judgement of divorce[1] required that respondent's parenting time be supervised. In November 2022, petitioner petitioned for an ex parte PPO. Petitioner described several incidents as the basis for her request. In one incident that occurred a few days before petitioner sought the PPO, respondent's mother had been supervising respondent's parenting time when he had a "mental breakdown" and took one of the children. Petitioner had worked with police to get the child back. When respondent ultimately returned the child, he walked toward petitioner's car, "balled his fists and scowled at" petitioner, then he raised a fist, but petitioner got into her car.

Petitioner further alleged that earlier that month, she would not give respondent her sleds to use during his parenting time and, during the child exchange, respondent "made a gun with his hand, pointed at [petitioner's] head, [and] pretended to shoot." Respondent then sent petitioner

---

[1] Notably, in the preface to the parties' judgment of divorce, the trial court stated it "heard trial in the matter on multiple days. The Defendant appeared for day one of trial and failed to appear for the subsequent three days of the trial." Also, plaintiff received sole legal custody and primary physical custody of the parties' three children.

text messages threatening to return to her home to take the sleds, and petitioner put furniture in front of her door to feel safe.

Petitioner also described an earlier event that took place over Easter weekend in 2022. Respondent had arrived for parenting time without a supervisor, and petitioner would not let him take the children. Respondent stated that he was going to take the children. Petitioner went inside her home and "locked the front door just as he crashed into it." Respondent "continued to ram into the door," and petitioner called 911. Respondent told her that she "was dead" and "would be sorry." Officers arrived and told respondent to leave. Petitioner asserted that respondent's bizarre actions showed how unpredictable and unstable he was.

On the same day that petitioner filed her petition, the circuit court granted the ex parte PPO. The order also, presumably erroneously, listed the same date of expiration. Respondent was never served with the PPO. Respondent attempted to pick up their children several times after this, but petitioner would not let him. In one incident in December 2022, respondent called the police to facilitate the exchange, and an officer informed him of the PPO's existence and verbally advised him of the PPO's terms.

In January 2023, the circuit court issued an amended PPO, which provided the same restrictions, but noted that the expiration date was for November of 2023. Respondent moved to vacate the PPO in April 2023, alleging that he had not been served and that petitioner had "wrongly obtained" the ex parte PPO because she had not shown a risk of immediate and irreparable injury.

The circuit court held a hearing on the motion, stating that petitioner had the burden of establishing the basis for the PPO. Petitioner testified about the incidents described in her petition.

To support his motion, respondent called his father, Timothy O'Hara, to testify. O'Hara testified that he had never seen respondent endanger his children. O'Hara testified that he was with respondent when respondent returned his child to petitioner in the November 2022 incident, and he did not see respondent make any threatening gestures at petitioner. O'Hara acknowledged that respondent's back was to him during the exchange.

Respondent also testified, denying the allegations. Respondent raised the issue of not being served with the PPO, arguing that an officer reading it to him over the phone did not constitute service, and that the officer did not file proof of service with the court. The circuit court asked him if the officer had read to him the contents of the PPO. Respondent answered that he did not hear all of it, and the circuit court asked respondent if he chose not to listen. Respondent responded, "Well, he could've easily handed me a copy. . . ."[2] Later, respondent again referred to when "the police tried to read [him] the PPO".

The circuit court found that respondent had actual notice of the PPO, but that it was correcting any service issue by holding the hearing, which gave respondent an opportunity to

---

[2] Given that PPO's are entered into the Law Enforcement Information Network (LEIN), the police officer was likely reading the PPO restrictions listed in LEIN, so there would be no "document" the officer could hand to respondent even if they were speaking face to face.

challenge the PPO. The circuit court found that petitioner met her burden of proof and denied respondent's motion.

Respondent now appeals. Respondent noted in his brief on appeal that he had attorney assistance in preparing his brief. MRPC 1.2(b)(1) provides that an attorney licensed in Michigan "may draft or partially draft" a brief without signing it or identifying him- or herself. The document must, however, include the following statement: "This document was drafted or partially drafted with the assistance of a lawyer licensed to practice in the State of Michigan, pursuant to Michigan Rule of Professional Conduct 1.2(b)." MRPC 1.2(b)(1). Although respondent's brief did not fully incorporate this statement, respondent otherwise abided by the rule by explaining that he had received attorney assistance and signing the brief. See MRPC 1.2(b).

Respondent argues that the circuit court erred by denying his motion to vacate the ex parte PPO when petitioner "wrongly obtained" the PPO and did not serve respondent. This Court reviews for an abuse of discretion a trial court's decision on a motion to terminate a PPO. See *Pickering v. Pickering*, 253 Mich App 694, 700; 659 NW2d 649 (2002). A trial court abuses its discretion when it chooses an outcome that falls outside the range of principled outcomes. *Nowacki v Dep't of Corrections*, 319 Mich App 144, 148; 900 NW2d 154 (2017). Additionally, this Court reviews for clear error a trial court's findings of fact. *Sweebe v Sweebe*, 474 Mich 151, 154; 712 NW2d 708 (2006). We review de novo questions of statutory interpretation. *Id*.

Due-process protections apply to proceedings on a motion to terminate a PPO. See *CAJ v KDT*, 339 Mich App 459, 468; 984 NW2d 504 (2021). "[A]t a minimum, due process of law requires that deprivation of life, liberty, or property by adjudication must be preceded by notice and an opportunity to be heard." *Bonner v City of Brighton*, 495 Mich 209, 235; 848 NW2d 380 (2014). An "opportunity to be heard 'must be granted at a meaningful time and in a meaningful manner.'" *Id*., quoting *Armstrong v Manzo*, 380 US 545, 552; 85 S Ct 1187; 14 L Ed 62 (1965).

Under MCL 600.2950, a party may petition a court for a PPO against a former spouse. When "it clearly appears from specific facts shown by a verified complaint, written motion, or affidavit that immediate and irreparable injury, loss, or damage will result from the delay required to effectuate notice or that the notice will itself precipitate adverse action before a [PPO] can be issued," the court "shall" enter the PPO without notice to the respondent. MCL 600.2950(12). Further, if a respondent has not yet been served when an officer responds to a call about a violation of the PPO, the officer shall serve the respondent with the order or inform the respondent about the PPO. MCL 600.2950(22). The officer must then enter into the Law Enforcement Information Network that the respondent received actual notice of the PPO and file proof of notice with the court. *Id*. See also MCR 3.706(E).

In her petition, petitioner met the burden for an ex parte PPO, describing several incidents that supported the request and established the risk of immediate or irreparable injury, loss, or damage. Respondent argues that petitioner did not call the police for protection when denying his parenting time and showed no injury; however, petitioner asserted in the petition that she had called police on at least two occasions before seeking the PPO. Regardless, calling the police is not required to obtain a PPO. Nor was petitioner required to show that an injury had already occurred. Rather, she properly described several incidences of respondent engaging in threatening behavior toward her.

Respondent also argues that petitioner failed to provide an affidavit to support her petition, but submitting an affidavit is not the sole avenue to obtaining an ex parte PPO. See MCL 600.2950(12). Instead, petitioner could, and did, support her request with her written petition that detailed several incidences of respondent's aggressive behavior. The cases on which respondent relies as support for the affidavit requirement relate to contempt proceedings.

There seems to be no dispute that respondent was not properly served with the PPO, at least until the officer informed him of it in December 2022. Failure to serve the PPO, however, does not affect its validity. MCR 3.706(D). Respondent argues that the officer's notice to him was not proper because the officer would have needed also to provide him with the physical PPO and file proof of notification with the court. At the hearing on respondent's motion, however, respondent indicated that he did not listen to the officer's attempt to give him a full description of the PPO; rather, he had wanted a physical copy of the order. Both the statute and court rule permit oral notice of PPOs. See MCL 600.2950(22); MCR 3.706(E). Although the record does not establish that the officer filed proof of the notice with the court, there is no question that respondent received notice of the PPO in December 2022, whether or not he chose to listen to all of the details.

Crucially, the circuit court addressed the lack of service by holding a full evidentiary hearing. Therefore, respondent's argument that he was denied his right to notice and an opportunity to challenge the PPO is without merit. Petitioner properly bore the burden of proof at the hearing, see *Pickering*, 253 Mich App at 697, and she testified about the various incidents that caused her to petition for the PPO. Respondent also testified and had his father testify in his defense. Respondent, therefore, had full notice of the allegations against him and an opportunity to be heard about those allegations. See *Bonner*, 495 Mich at 235. There is also nothing in the record to suggest that respondent was ever held in contempt for violating the ex parte PPO, and he cannot show prejudice when he was given notice of the PPO in December 2022, did not move to vacate the PPO until April 2023, and was given a full evidentiary hearing to address the PPO.[3]

Affirmed.

/s/ Brock A. Swartzle
/s/ James Robert Redford
/s/ Kathleen A. Feeney

---

[3] Respondent's complaints regarding missed parenting time are properly addressed in the divorce action, not the PPO file. While it appears true that the custody order in the Judgment of Divorce was not referenced in either PPO, the terms of the PPO did not preclude respondent from conducting supervised visitation with his children. Thus, the trial court that granted the Judgment of Divorce can address any denial of parenting time and requests for make-up parenting time as those issues are not controlled by the PPO.