*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BAILEY & BIDDLE LLC,

        Appellant,

v

CITY OF ST. JOSEPH,

        Appellee.

UNPUBLISHED
February 12, 2019

No. 340989
Berrien Circuit Court
LC No. 17-000112-AA

Before: METER, P.J., and SAWYER and CAMERON, JJ.

PER CURIAM.

The present case arises from an order for demolition of a home owned by appellant Bailey & Biddle, LLC. The City of St. Joseph's chief building official ordered the demolition of the property in accordance with the International Property Maintenance Code (IPMC) as adopted by the City. Appellant appealed the building official's decision to the City's Property Maintenance Board of Appeals (PMBOA), which affirmed the demolition order. Appellant then appealed to the circuit court, and the circuit court affirmed the decision of the PMBOA. Appellant now appeals the circuit court's decision to this Court as on leave granted.[1] We affirm.

## I. BACKGROUND

Appellant owns an unoccupied, single-family home in the City of St. Joseph. The home was constructed around 1900 and was purchased by appellant in 2000. Beginning in 2013, the city began to notice several code violations on the exterior of the home, including a defective roof. Appellant was given more than a year to replace the roof and repair the remaining issues, but failed to do so. Appellant was again notified of the necessity of these repairs in 2015 and met with city officials to discuss a repair plan. The city informed appellant that replacing the roof was the highest priority. Appellant pulled a permit to replace the roof, but never completed

---

[1] *Bailey & Biddle LLC v City of St. Joseph*, unpublished order of the Court of Appeals, entered April 10, 2018.

the work. Appellant placed a tarp over the roof, but the tarp would often come loose, revealing a hole in the roof. The hole was large enough that birds regularly flew into the home.

Appellant was reminded several times that it needed to repair the home, but appellant failed to do so. Because of appellant's failure to begin substantive work on the roof, the city revoked appellant's permit in early 2017 and obtained an administrative search warrant to search the interior of the home. The city's chief building official inspected the home and took several pictures. The pictures revealed severe mold and water damage. The ceiling had caved in in several places and there was a hole in the floor. Water damage had caused the plaster to fall off the walls throughout the home. Several structural supports were so water logged that they could not reliably hold their loads. The property was also without utility services, and had been since at least the mid-2000s.

Because of the extensive damage to the home, the city concluded that the home was beyond reasonable repair and ordered appellant to demolish and remove the structure. Appellant appealed this decision to the PMBOA, which held a hearing on his claim. At the hearing, the city presented evidence that the repairs necessary to make the home habitable would cost roughly $122,000. The structure had a true cash value between $40,000 and $50,000 in habitable condition.[2] Appellant, who was represented by an attorney, disagreed with the repair estimate, and presented the report of an engineer who had inspected the home. The engineer opined that the cost to repair the home would be 50% to 75% of the cost estimated by the city. Appellant also offered a statement from a retired demolition contractor who opined that the city's figures were based on contractor prices and that most of the repair work could be done by appellant. The city expressed concern over whether appellant could afford to make the repairs given that appellant was in arrears on the property taxes. The city also questioned whether appellant's engineer's estimate accounted for the cost of removing the decayed materials and pulling building permits.

The PMBOA members likewise questioned appellant's repair estimate, opining that water damage is often worse than it appears. The PMBOA members also questioned whether appellant had the skill and expertise to perform the repairs itself and noted appellant's history of failing to maintain the property. Accordingly, the PMBOA voted to affirm the demolition order. Appellant then appealed the PMBOA's decision to the circuit court, which affirmed the PMBOA, finding that there was overwhelming evidence to affirm the demolition order. This appeal followed.

I. ANALYSIS

A. CIRCUIT COURT STANDARD OF REVIEW

Appellant first argues that the circuit court applied an incorrect standard of review by considering the whole record to determine whether the PMBOA's decision was supported by competent, material, and substantial evidence. According to appellant, the circuit court's review

---

[2] The estimated true cash value of the land was also between $40,000 and $50,000.

should have been limited to whether the PMBOA's decision was authorized by law. We disagree.

At the outset, we note that appellant concedes on appeal that it agreed to the circuit court's application of the substantial evidence test. "A party is not allowed to assign as error on appeal something which his or her own counsel deemed proper at trial since to do so would permit the party to harbor error as an appellate parachute." *Braverman v Granger*, 303 Mich App 587, 608; 844 NW2d 485 (2014) (internal citation, block notation, and quotation marks omitted). Accordingly, appellant has waived this issue.

In any event, even disregarding appellant's waiver, its claim is without merit. Under Const 1963, art 6, § 28, final administrative decisions, "which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts" of this state. The reviewing court must determine (1) whether the decision is "authorized by law" and (2) whether the decision is "supported by competent, material and substantial evidence on the whole record." Const 1963, art 6, § 28. Here, there is no question that the PMBOA's decision affects appellant's private right to the unencumbered enjoyment of the subject property. Moreover, it is clear to this Court that the PMBOA proceedings are quasi-judicial. While the PMBOA meetings do not share all of the hallmarks of judicial proceedings (in particular, our strict evidentiary rules), the meetings certainly share key similarities with court proceedings, including the right to notice, the right to representation, the right to present evidence and argument, and the right to a neutral decision maker. See *Midland Cogeneration Venture Ltd Partnership v Naftaly*, 489 Mich 83, 91-92; 803 NW2d 674 (2011) (concluding that administrative officials engage in a quasi-judicial function when they resolve factual claims on a case-by-case basis through an evaluation of the evidence). Accordingly, Const 1963, art 6, § 28 required the circuit court to review the PMBOA's decision to determine whether the decision was authorized by law *and* whether the decision was supported by competent, material and substantial evidence on the whole record. Appellant's argument to the contrary is without merit.

## B. OPPORTUNITY TO MAKE REPAIRS

Next, appellant argues that the City's demolition order was not authorized by law and violated its due-process rights because the City failed to provide appellant an opportunity to repair the structure. We disagree.

To the extent that appellant asserts that due process was violated because no opportunity to repair was given, there is no fundamental constitutional right to repair a structure that is unfit for human occupancy, and any private right to repair must yield to the city's higher interest in protecting the safety of its citizens. See *Bonner v City of Brighton*, 495 Mich 209, 228-231; 848 NW2d 380 (2014). Due process does entitle appellant to a meaningful opportunity to be heard before a permanent deprivation, *id.* at 238-239, but, in this case, there is no concern that appellant was not given a meaningful opportunity to present his case. Indeed, appellant was given a full hearing before the PMBOA at which he was represented by counsel and presented evidence for an individualized fact finding. In short, there is no evidence that appellant was denied due process.

Regarding appellant's claim that the PMBOA's decision was not authorized by law, appellant argues that, because a right to repair is guaranteed under the city's ordinances, he could not be ordered to demolish the home before he had been given a reasonable opportunity to repair it. We review de novo the "interpretation and application of a municipal ordinance." *Id*. at 221-222. The "goal of construction and interpretation of an ordinance is to discern and give effect to the intent of the legislative body." *Id*. at 222. The most reliable evidence of this intent is the plain and ordinary meaning of the ordinance itself. *Id*.

As adopted by the City, the IPMC provides for demolition of property as follows:

> The code official shall order the owner of any premises upon which is located any structure, which in the code official's judgment is so old, dilapidated or has become so out of repair as to be dangerous, unsafe, insanitary or otherwise unfit for human habitation or occupancy, and such that it is unreasonable to repair the structure, to demolish and remove such structure; *or* if such structure is capable of being made safe by repairs, to repair and make safe and sanitary or to demolish and remove at the owner's option; *or* where there has been a cessation of normal construction of any structure for a period of more than two years, to demolish and remove such structure. [2003 IPMC § 110.1 (emphasis added).]

As used in this provision, the term "or" is disjunctive, signaling a choice between alternatives. See *Ellison v Dep't of State*, 320 Mich App 169, 179; 906 NW2d 221 (2017). Consequently, under 2003 IPMC § 110.1, demolition may be ordered under any of three unique circumstances. First, demolition and removal of a structure shall be ordered when, (1) the structure is unsafe for human occupancy and (2) it is unreasonable to repair it. Second, alternatively, if the structure is capable of being made safe by repairs, the code official shall give the owner the option to repair the structure or demolish and remove it. Third, if there has been a cessation of normal construction on a dilapidated structure for more than two years, the code official shall order the owner to demolish and remove the structure.

Considering these three distinct scenarios, it is clear that a reasonable opportunity to repair is only required when the structure is capable of reasonable repair. When the structure is incapable of reasonable repair, however, the code official "shall" order demolition. See *Russell v Detroit*, 321 Mich App 628, 639; 909 NW2d 507 (2017) (concluding that the term "shall" indicates a mandatory directive). Thus, because the home was unreasonable to repair, 2003 IPMC § 110.1 did not require that the city give appellant an opportunity to repair it before ordering demolition.

Alternatively, appellant argues that an opportunity to repair the home is mandated under the IPMC's notice provision, 2003 IPMC § 107. 2003 IPMC § 107.1 mandates that all orders issued under 2003 IPMC § 110.1 shall comply with the notice requirements set forth in 2003 IPMC § 107.2. In turn, 2003 IPMC § 107.2 requires the notice to include "a correction order allowing a reasonable time to make the repairs and improvements required to bring the dwelling unit or structure into compliance with the provisions of this code." Thus, appellant argues that, because an order to repair is required under 2003 IPMC § 107.2, the lack of a reasonable time to repair in 2003 IPMC § 110.1 is immaterial. We disagree.

We must read provisions of an ordinance "together to produce an harmonious whole and to reconcile any inconsistencies wherever possible." *SMK, LLC v Dep't of Treasury*, 298 Mich App 302, 309; 826 NW2d 186 (2012) (internal citation and quotation marks omitted). In doing so, we avoid any construction that would render any part of the ordinance surplusage or nugatory. *Id*. at 305. As previously stated, 2003 IPMC § 110.1 draws a distinction between structures that are reasonable to repair and those that are not. Property owners are given a reasonable opportunity to repair those structures that are capable of reasonable repair and are given no opportunity to repair those structures that are not. Reading a repair requirement into 2003 IPMC § 110.1 by way of 2003 IPMC § 107.2 would therefore require this Court to ignore the former's distinction between repairable and unrepairable structures. In other words, appellant's proposed interpretation impermissibly renders the first demolition scenario in 2003 IPMC § 110.1 nugatory. To avoid this construction, we conclude that the provisions should be harmonized by recognizing that the reasonable time to repair a structure that is incapable of reasonable repair is no time at all. Accordingly, a notice and order for demolition need not include a repair provision when the structure "is so old, dilapidated or has become so out of repair as to be dangerous, unsafe, insanitary or otherwise unfit for human habitation or occupancy, and . . . it is unreasonable to repair the structure." 2003 IPMC § 110.1.

Appellant raises several additional arguments asserting that he should have been given a reasonable time to make repairs. Each of these arguments is without merit. First, appellant asserts that a reasonable time to make repairs should be given when the property has historical or sentimental value. We disagree. While historical or sentimental value may be considered when determining whether a property is reasonably capable of repair, *Bonner*, 495 Mich at 233, once the property has been deemed incapable of reasonable repair, the only option is demolition, see 2003 IPMC § 110.1. Second, appellant argues that the city's notice of code violations in 2013 was procedurally deficient and that the city improperly concluded that appellant's roofing permit had expired. We need not answer these question, however, because the demolition order was issued because the structure was presently unsafe for human occupancy and incapable of reasonable repair. Any prior opportunity appellant had to maintain the structure before it became irreparable is irrelevant.[3] Finally, appellant argues that the present case is indistinguishable from *Himes v City of Flint*, 38 Mich App 308; 196 NW2d 321 (1972), wherein this Court concluded that the city's notice of violations was inadequate as a matter of law because it failed to advise the property owners of the defects which would justify demolition of their structure. *Himes*, however, is not binding upon this Court, MCR 7.215(J)(1), and, in any event, does not interpret a

---

[3] We note that, even had the 2013 notice been deficient, appellant received several additional notices between the initial notice and the demolition order. Indeed, appellant had met with the city to discuss the violations. Thus, appellant cannot seriously argue that it was not aware of the code violations. Regarding the roofing permit, the city presented testimony that a roofing permit expires 180 days after it is issued if no substantive work is performed under the permit. The city also presented evidence that appellant did not undertake any substantive repair work within the 180-day period. Rather, appellant merely placed a tarp over the roof.

demolition provision similar to 2003 IPMC § 110.1.[4]  Accordingly, *Himes* offers little support for appellant's argument that a demolition order under 2003 IPMC § 110.1 must include an opportunity to repair.

## C. PMBOA'S FINDINGS

Finally, appellant argues that the PMBOA and the circuit court erred by affirming the city's demolition order.  "A final agency decision is subject to court review but it must generally be upheld if it is not contrary to law, is not arbitrary, capricious, or a clear abuse of discretion, and is supported by competent, material and substantial evidence on the whole record." *Vanzandt v State Employees Retirement System*, 266 Mich App 579, 583; 701 NW2d 214 (2005). An agency's "decision is not 'authorized by law' when it is in violation of a statute or a constitutional provision, in excess of an agency's statutory authority or jurisdiction, made upon unlawful procedure that results in material prejudice, or when it is arbitrary and capricious." *Bureau of Professional Licensing v Butler*, 322 Mich App 460, 465; 915 NW2d 734 (2017).  In applying the substantial-evidence test, the circuit court must review the entire record to determine whether reasonable minds would accept the evidence as sufficient to support the agency's decision.  *In re Grant*, 250 Mich App 13, 18-19; 645 NW2d 79 (2002).  "Our review of the circuit court's decision is limited to determining whether the court applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the agency's factual findings."  *Id*. at 18 (internal citation and quotation marks omitted).  "In other words, the circuit court's legal conclusions are reviewed de novo and its factual findings are reviewed for clear error."  *Braska v Challenge Mfg Co*, 307 Mich App 340, 352; 861 NW2d 289 (2014).

Appellant raises several challenges to the PMBOA's decision to affirm the demolition order and the circuit court's decision to affirm the PMBOA.  In essence, appellant argues that the PMBOA's decision was not supported by sufficient factual findings to establish that the home was incapable of reasonable repair.  As a general matter, "findings of fact are sufficient where it is manifest that the fact finder was aware of the factual issue, that [it] resolved it, and that it would not facilitate appellate review to require further explanation of the path followed by the fact-finder in reaching the result."  *Blom v Thermotron Corp*, 139 Mich App 50, 55; 360 NW2d 172 (1984).  Although we agree with appellant that the PMBOA could have stated its factual findings more explicitly, we conclude that the PMBOA's discussion of the property and appellant's plan to repair it sufficiently resolved the factual issues to support its decision to affirm the demolition order.

---

[4] We recognize that the notice provision interpreted in *Himes* was similar to 2003 IPMC § 107.2; however, as already noted, as applicable to this case, the requirements of 2003 IPMC § 107.2 must be read in light of 2003 IPMC § 110.1's distinction between reasonably repairable structures and those that are incapable of reasonable repair.  Because there is no indication that the demolition provision in *Himes* contained a similar distinction, *Himes* is distinguishable from this case.

In this case, the parties do not dispute that the home was unsafe for human occupation; rather, the central issue is whether it was unreasonable to repair the home. Relevant considerations for determining whether it is reasonable to repair a structure include the estimated value of the property and the cost of repairs, whether the owner has presented a "viable repair plan," and any "cultural, historical, familial, or artistic value" the structure may have. *Bonner*, 495 Mich at 233.

Appellant argues that the PMBOA improperly shifted the burden to it by considering appellant's financial ability to make the repairs and appellant's home-repair expertise. We disagree. Appellant's ability to pay for the repairs was relevant to whether appellant had a viable repair plan. In turn, appellant's lack of personal expertise in home repair was relevant to its ability to pay for the repairs, especially given the testimony that appellant could undertake the repairs itself to avoid the cost of hiring a contractor. Moreover, contrary to appellant's argument, appellant's prior failure to maintain the structure was relevant to appellant's ability—financial or otherwise—to make the repairs presently necessary to render the structure habitable.

According to appellant, the PMBOA failed to consider the home's sentimental or historical value when determining that it was unreasonable to repair it. Appellant, however, has not provided any explanation as to why the structure has sentimental or historical value. Appellant offered testimony that its agent had lived in the home when he was younger. This testimony, however, was not offered to show any sentimental value. Rather, it was offered to rebut the city's assertion that water service to the home was discontinued in 1979. Appellant's agent testified that the water service was not stopped until the mid-2000s, but did not testify that the home held any non-economic value to appellant.

Appellant also argues that the PMBOA improperly speculated about other possible problems with the structure and that the PMBOA improperly considered the board member's personal experiences with moisture damage. The board members considered the photographs of the water damage in the home and noted that, in their experience, when water damage was as extensive as portrayed in the photographs, hidden damage was usually present. This is not improper speculation; rather, it is the board members' application of their relevant expertise to the evidence presented at the meeting. Indeed, this is the basic purpose of the IPMC's requirement that board members be "qualified by experience and training to pass on matters pertaining to property maintenance." 2003 IPMC § 111.2. The PMBOA was created for the very purpose of applying property-maintenance expertise to evidence of property damage and appellant has not shown that any extra-evidentiary consideration improperly influenced the PMBOA's decision.

Appellant asserts that the PMBOA allowed the improper denigration of a qualified expert by the City's attorney. More specifically, appellant asserts that it was improper for the City's attorney to characterize appellant's engineer as considering the structural integrity of building from the perspective of an engineer as compared to considering all of the problems that needed to be rectified for code compliance. Again, we disagree. There is nothing improper in an attorney challenging an expert witness's testimony on the basis of the evidence, see *People v Unger*, 278 Mich App 210, 237; 749 NW2d 272 (2008), and there is nothing wrong with a fact finder assessing expert credibility, see *SSC Assoc Ltd Partnership v Gen Retirement Sys of Detroit*, 210 Mich App 449, 452; 534 NW2d 160 (1995).

Finally, appellant asserts that the PMBOA impermissibly expressed personal animus toward appellant and, in doing so, violated appellant's due-process right to an impartial decision-maker. See *Mitchell v Mitchell*, 296 Mich App 513, 523; 823 NW2d 153 (2012) ("Due process requires that an unbiased and impartial decision-maker hear and decide a case."). Yet, the only evidence of bias that appellant offers are his claims that the PMBOA improperly considered appellant's capacity to make the necessary repairs. As already discussed, appellant's capacity to perform the repairs was a relevant consideration for the PMBOA. Accordingly, appellant has not established bias. See *Schellenberg v Rochester Mich Lodge No 2225*, 228 Mich App 20, 39; 577 NW2d 163 (1998) (concluding that opinions formed by decision makers on the basis of the facts presented, even when critical of a party, do not constitute bias or partiality).

The record shows that the structure held an estimated true cash value between $40,000 and $50,000 in habitable condition. Estimates of repairs necessary to make the home habitable ranged from roughly $61,000 to roughly $122,000. As it stands, the structure has severe water damage, widespread mold infestation, and extensive structural damage. Although appellant claimed that it could perform the repairs itself, the record showed that appellant had contributed to the structure's dilapidation by failing to undertake necessary repairs despite years of notices from the city. Thus, there was sufficient evidence from which reasonable minds could determine that it was unreasonable to repair the property. Accordingly, the PMBOA, and the circuit court on first appeal, did not err by affirming the demolition order

Affirmed.

/s/ Patrick M. Meter
/s/ David H. Sawyer
/s/ Thomas C. Cameron