*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* K. R. FISHER, Minor.

UNPUBLISHED
July 9, 2020

No. 351947
Genesee Circuit Court
Family Division
LC No. 07-122616-NA

Before: BORRELLO, P.J., and RONAYNE KRAUSE and RIORDAN, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order to remove her minor child, KF, from respondent's care and take KF into protective custody that was entered following the preliminary hearing at which mother was not present. For the reasons set forth in this opinion, we vacate the order removing KF from mother's care.

## I. BACKGROUND

Respondent and KF came to the attention of the Department of Health and Human Services (DHHS) and Child Protective Services (CPS) when respondent sought assistance with preventing a pending eviction where she owed over $2,000 in rent to her landlord. An investigation ensued during which mother tested positive for controlled substances.

On November 4, 2019, CPS investigator Benjamin Nichols filed a petition requesting that the court take jurisdiction over KF and remove the minor child from respondent's care to be temporarily placed with the DHHS. On the same day, a preliminary hearing was scheduled for 2:00 p.m. on November 13, 2019, and a notice of hearing for the November 13 preliminary hearing was issued. Also, on November 4, 2019, according to the proof of service contained within the lower court file, this notice of the November 13 hearing was served *only on the prosecuting attorney and the DHHS*.

The preliminary hearing was held on November 13, 2019. For reasons not evident from the record, the hearing did not commence until 4:08 p.m. Respondent was not present, although an attorney was present who had been appointed to represent respondent. The referee inquired of Nichols about whether respondent had received notice:

-1-

*The Referee*: All right. Mr. Nichols what was—what notice was given to mother to try and get her to appear today?

*Mr. Nichols*: I was speaking with her yesterday. I was wanting—I was trying to have—schedule an FTM (Family Time Meeting) with her so I could go over what would be happening at court and try and see if she could identify any possible relatives since we were seeking to—for removal for [KF] there. And she was not willing to cooperate, tell me where she was, what the address was, you know, name, phone number, any kind of identifying information—

\* \* \*

*Mr. Nichols*: —in court. And today, I called her, texted her, and she was aware. About noon I got ahold of her, and she was aware that court was today and she said she didn't want to come. She wanted to reschedule. She said she didn't have time to come today.

*The Referee*: Okay. The Court will indicate she's also contacted the—my assistant and said she didn't understand why her appointment couldn't be rescheduled, but today is the date and time given for notice, so.

The referee proceeded with the preliminary hearing. An order authorizing the petition and removing KF from respondent's care was entered. This order further provided that the referee had found that notice of the hearing had been given as required by law. Additionally, an order was entered authorizing the DHHS or any peace officer to take KF into protective custody.

## II. DUE PROCESS

On appeal, respondent argues that she was denied her right to procedural due process when the preliminary hearing, which resulted in KF being removed from respondent's care, was held in respondent's absence without providing her with adequate notice of the hearing.

## A. STANDARD OF REVIEW

We review de novo, as a question of constitutional law, whether child protective proceedings complied with a parent's right to procedural due process. *In re Sanders*, 495 Mich 394, 403-404; 852 NW2d 524 (2014). "The interpretation and application of statutes and court rules are also reviewed de novo." *Id*.

## B. ANALYSIS

Natural parents possess a fundamental liberty interest, protected by the Fourteenth Amendment, in the "care, custody, and management of their child." *Santosky v Kramer*, 455 US 745, 753; 102 S Ct 1388; 71 L Ed 2d 599 (1982); see also *In re Sanders*, 495 Mich at 409 (stating that among the fundamental rights protected by the Fourteenth Amendment "is the right of parents to make decisions concerning the care, custody, and control of their children"). It is true of course that a "parent's right to control the custody and care of her children is not absolute, as the state has a legitimate interest in protecting the moral, emotional, mental, and physical welfare of the minor

-2-

and in some circumstances neglectful parents may be separated from their children." *In re Sanders*, 495 Mich at 409-410, quoting *Stanley v Illinois*, 405 US 645, 652; 92 S Ct 1208; 31 L Ed 2d 551 (1972) (quotation marks omitted). However, a parent must be provided with adequate due process before the state may interfere with the parent's fundamental right in the care, custody, and control of the child. *Santosky*, 455 US at 753 ("[S]tate intervention to terminate the relationship between [a parent] and [the] child must be accomplished by procedures meeting the requisites of the Due Process Clause.") (quotation marks and citations omitted; alterations in original); *In re Sanders*, 495 Mich at 410 ("[D]ue process demands that minimal procedural protections be afforded an individual before the state can burden a fundamental right.").

Although the concept of due process is somewhat difficult to define with precision, see *Lassiter v Dep't of Social Servs*, 452 US 18, 24; 101 S Ct 2153; 68 L Ed 2d 640 (1981), it is axiomatic that due process requires "at a minimum . . . that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case," *Mullane v Central Hanover Bank & Trust Co*, 339 US 306, 313; 70 S Ct 652; 94 L Ed 865 (1950); see also *Bonner v City of Brighton*, 495 Mich 209, 235; 848 NW2d 380 (2014) (citing *Mullane*); *In re Rood*, 483 Mich 73, 92; 763 NW2d 587 (2009) (opinion by CORRIGAN, J) (citing *Mullane* regarding the due-process requirement of notice in the context of child-protective proceedings). It is "plain beyond the need for multiple citation that a natural parent's desire for and right to the companionship, care, custody, and management of his or her children is an interest far more precious than any property right." *Santosky*, 455 US at 758-759 (quotation marks and citation omitted). When the state seeks to interfere with these important familial relationships, the procedures employed must be "fundamentally fair." *Id*. at 753-754; see also *In re Brock*, 442 Mich 101, 111; 499 NW2d 752 (1993).

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 US at 314. The "right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." *Id*. Furthermore, "[t]he notice must be of such nature as reasonably to convey the required information, and *it must afford a reasonable time for those interested to make their appearance*. But if with due regard for the practicalities and peculiarities of the case these conditions are *reasonably met* the constitutional requirements are satisfied. *Id*. at 314-315 (citations omitted; emphasis added).

At issue in this case is the lack of notice respondent received prior to the date of the preliminary hearing. MCR 3.965(B)(1) addresses issues of notice and attendance of respondent parents regarding the preliminary hearing, stating as follows:

> The court must determine if the parent, guardian, or legal custodian has been notified, and if the lawyer-guardian ad litem for the child is present. The preliminary hearing may be adjourned for the purpose of securing the appearance of an attorney, parent, guardian, or legal custodian or may be conducted in the absence of the parent, guardian, or legal custodian if notice has been given or if the court finds that a reasonable attempt to give notice was made.

Furthermore, "the court shall ensure" that a respondent in a child protective proceeding is "notified of each hearing." MCR 3.921(B)(1)(a). MCR 3.920(B)(2)(b) provides in relevant part that "[i]n a child protective proceeding, a summons must be served on any respondent and any nonrespondent parent." MCR 3.920(B) further provides:

(3) Content. The summons must direct the person to whom it is addressed to appear at a time and place specified by the court and must:

(a) identify the nature of hearing;

(b) explain the right to an attorney and the right to trial by judge or jury, including, where appropriate, that there is no right to a jury at a termination hearing;

(c) if the summons is for a child protective proceeding, include a notice that the hearings could result in termination of parental rights; and

(d) have a copy of the petition attached.

(4) Manner of Serving Summons.

(a) Except as provided in subrule (B)(4)(b), a summons required under subrule (B)(2) must be served by delivering the summons to the party personally.

(b) If the court finds, on the basis of testimony or a motion and affidavit, that personal service of the summons is impracticable or cannot be achieved, the court may by ex parte order direct that it be served in any manner reasonably calculated to give notice of the proceedings and an opportunity to be heard, including publication.

(c) If personal service of a summons is not required, the court may direct that it be served in a manner reasonably calculated to provide notice.

(5) Time of Service.

(a) A summons shall be personally served at least:

(i) 14 days before hearing on a petition that seeks to terminate parental rights or a permanency planning hearing,

(ii) 7 days before trial or a child protective dispositional review hearing, or

(iii) 3 days before any other hearing.

(b) If the summons is served by registered mail, it must be sent at least 7 days earlier than subrule (a) requires for personal service of a summons if the party to be served resides in Michigan, or 14 days earlier than required by subrule (a) if the party to be served resides outside Michigan.

-4-

(c) If service is by publication, the published notice must appear in a newspaper in the county where the party resides, if known, and, if not, in the county where the action is pending. The published notice need not include the petition itself. The notice must be published at least once 21 days before a hearing specified in subrule (a)(i), 14 days before trial or a hearing specified in subrule (a)(ii), or 7 days before any other hearing.

Additionally, MCR 3.920(D) involves notice of hearings and provides as follows:

(D) Notice of Hearing.

(1) General. Notice of a hearing must be given in writing or on the record at least 7 days before the hearing except as provided in subrules (D)(2) and (D)(3), or as otherwise provided in the rules.

(2) Preliminary Hearing; Emergency Removal Hearing.

(a) When a juvenile is detained, notice of the preliminary hearing must be given to the juvenile and to the parent of the juvenile as soon as the hearing is scheduled. The notice may be in person, in writing, on the record, or by telephone.

(b) When a child is placed outside the home, notice of the preliminary hearing or an emergency removal hearing under MCR 3.974(C)(3) must be given to the parent of the child as soon as the hearing is scheduled. The notice may be in person, in writing, on the record, or by telephone.

(3) Permanency Planning Hearing; Termination Proceedings.

(a) Notice of a permanency planning hearing must be given in writing at least 14 days before the hearing.

(b) Notice of a hearing on a petition requesting termination of parental rights in a child protective proceeding must be given in writing at least 14 days before the hearing.

(4) Failure to Appear. When a party fails to appear in response to a notice of hearing, the court may order the party's appearance by summons or subpoena.

In this case, the record makes clear that respondent was never served prior to the preliminary hearing with written notice of the preliminary hearing or a summons. Notice of the hearing was sent to the DHHS and the prosecutor, and from what we can glean from Nichols' testimony, respondent only received actual notice of the preliminary hearing via telephone at approximately noon on the day of the hearing. This unexplained lack of notice to respondent occurred even though the preliminary hearing had been scheduled on the court's calendar nine days before it occurred. The record also reflects that respondent contacted the referee directly and that the referee denied her request to adjourn the hearing to a later date.

Contrary to petitioner's characterization on appeal of Nichols' description of his telephone conversation with respondent that occurred on the day before the hearing, there is nothing in the record to indicated that Nichols actually informed respondent during that conversation of the court proceeding that was scheduled to occur on November 13 without resorting to speculation and conjecture. Nichols specifically told the referee at the preliminary hearing that on the previous day, he had spoken to respondent in an attempt to set up a family team meeting so he "could go over what would be happening at court." In other words, Nichols explained to the referee that his reason for trying to schedule a family team meeting was to discuss what would occur in court but there is nothing in the record before us from which we can glean that Nichols made this reason apparent to respondent. Instead, he texted and called her on the day of the hearing to inform her of the hearing that was scheduled, and he eventually succeeded in giving her notice that day, approximately two hours before the hearing was scheduled to begin.

Turning first to the relevant court rules, MCR 3.920(D)(2)(b) permits notice of a preliminary hearing to be given by telephone but also requires notice of the preliminary hearing to be given as soon as the hearing is scheduled. The referee determined that notice had been given to respondent and that the hearing could therefore proceed in respondent's absence. MCR 3.965(B)(1); MCR 3.921(B)(1)(a).

However, the question becomes whether two hours oral notice of the hearing was fundamentally fair and provided respondent with constitutionally sufficient due process under the circumstances present here, see *Santosky*, 455 US at 753-754; *Mullane*, 339 US at 313-315, where the hearing had been scheduled nine days earlier and Nichols had spoken with respondent by telephone the previous day without specifically notifying her of the hearing that was scheduled to occur the next day, instead waiting until essentially the last minute to ensure that respondent received some degree of notice.

To determine what constitutes sufficient due process before a parent's fundamental liberty interest in the care, custody, and control of the parent's child is burdened by the state, we apply the three factors enunciated by the United States Supreme Court in *Mathews v Eldridge*, 424 US 319, 335; 96 S Ct 893; 47 L Ed 2d 18 (1976). See *In re Sanders*, 495 Mich at 410-411.

> "[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." [*In re Sanders*, 495 Mich at 410-411, quoting *Mathews*, 424 US at 335 (alteration in original).]

With respect to the first factor, a parent's interest in the care, custody, and control of the parent's child is, as we have already noted, one of the fundamental liberty interests protected by the Fourteenth Amendment and an interest that is obviously more important than any mere property interest. *Santosky*, 455 US at 753, 758-759; *In re Sanders*, 495 Mich at 409. The importance of a parent's private interest in maintaining the fundamental right to direct the care, custody, and control of his or her child without governmental interference, as well as the parent's

interest in the accuracy and justice of a decision affecting that fundamental right is "commanding," see *Santosky*, 455 US at 758-759, and "cannot be overstated," *In re Sanders*, 495 Mich at 415.

With respect to the second factor, the "essence of due process is the requirement that a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it." *Bonner*, 495 Mich at 238 (quotation marks and citation omitted; alteration in original). Here, the preliminary hearing at issue was directed at deciding both whether the petition would be authorized and whether KF should be removed from respondent's care at that juncture, clearly presenting the potential of a serious loss for respondent in the form of separation from her child for at least some period of time. See *Stanley*, 405 US at 647 ("This Court has not, however, embraced the general proposition that a wrong may be done if it can be undone. Surely, in the case before us, if there is delay between the doing and the undoing petitioner suffers from the deprivation of his children, and the children suffer from uncertainty and dislocation.") (citation omitted).

The "right to be heard has little reality or worth unless one is informed that the matter is pending," and adequate notice "*must afford a reasonable time for those interested to make their appearance.*" *Mullane*, 339 US at 314 (emphasis added). We question whether such short notice as occurred in the instant case would be considered even remotely reasonable had it occurred in any context other than a child-protective proceeding, proceedings in which trial courts, prosecutors, and the DHHS are notorious for holding parents to unrealistic—and often unfair— expectations of conscientiousness while excusing without question the lack of diligence or conscientiousness by DHHS workers. See, e.g., *In re Rood*, 483 Mich at 107-109, 111 (opinion by CORRIGAN, J.) (noting that the trial court's and DHHS's "compliance with the relevant laws and regulations was sorely lacking," describing the DHHS's lackluster efforts to involve the respondent, and noting that the trial court "excused" the DHHS's "failures of notice and communication" even though the trial court held the respondent accountable for his own communication shortcomings). This case provides another perfect example. Nichols failed to give respondent notice of the hearing when he was able to speak with her the day before the hearing and instead waited until the day of the hearing to try again.[1] Yet, petitioner on appeal faults respondent for not immediately arranging to attend the hearing on mere hours' notice and failing to provide a "good reason" for being unable to do so. This argument runs counter to the reality that petitioner had a responsibility to "make reasonable attempts to provide adequate notice" of the preliminary hearing. See *id*. at 113-114; see also *In re Adair*, 191 Mich App 710, 715; 478 NW2d 667 (1991) ("The DSS, as the petitioning party, is charged with providing that service of process is accomplished in accordance with the court rules."); MCR 3.921(B)(1)(a); MCR 3.965(B)(1).

---

[1] Additionally, the referee made no inquiry into why DHHS and the prosecutor were served but not respondent. Further, the referee did not make a meaningful record as to its basis for concluding that respondent's due process rights were not violated by the complete lack of written notice to respondent.

Furthermore, although respondent was represented by an attorney at the preliminary hearing, there is no indication in the record that the attorney had met with respondent beforehand.[2] In the absence of any discussions, we conclude that representation under such circumstances was, at best, constitutionally insufficient. See *In re Adair*, 191 Mich App at 711-715 (reversing the trial court's order placing the respondent-mother's minor children in temporary foster care based on the lack of proper notice to the respondent, and the trial court's failure to find that reasonable efforts had been made to locate respondent-mother before alternative service by publication was permitted, despite the fact that the respondent was represented by an attorney at the various proceedings from which she was absent); cf. also *Geders v United States*, 425 US 80, 88; 96 S Ct 1330; 47 L Ed 2d 592 (1976) (discussing the importance of the discussions and consultations between client and attorney during the course of the proceedings for strategizing and sharing information).

Providing respondent with two hours' notice of the hearing, when the record reflects that notice could have been provided the previous day during Nichols' telephone conversation with respondent, does not appear to be notice that provided respondent with a *reasonable* time in which to respond to the petition, *Mullane*, 339 US at 314, or a *meaningful* opportunity to participate in the preliminary hearing that was conducted in respondent's absence and that ended with an order to remove KF from the care of respondent and thereby infringed on respondent's right to the companionship, care, custody, and management of KF for at least some period of time, *Santosky*, 455 US at 758-759; *Armstrong v Manzo*, 380 US 545, 551, 552; 85 S Ct 1187; 14 L Ed 2d 62 (1965) (stating that the Constitution requires "timely notice" and that the " 'opportunity to be heard' " that is a fundamental requirement of due process "must be granted at a meaningful time and in a meaningful manner") (citation omitted).

Under the circumstances present here, the risk of an erroneous deprivation of respondent's right to the care, custody, and control of KF—even if the removal does not end in the permanent termination of her parental rights—and the high value of taking the simple additional step of informing respondent of the hearing while talking to her on the telephone the previous day, weigh heavily in favor of providing this additional reasonable effort toward giving adequate notice and concluding that respondent was not provided with constitutionally sufficient due process.

Next, we consider the third factor involving the governmental interest. When the parent has not yet been adjudicated unfit, which was the case here with respondent, the state's interest is also in preserving the familial relationship and is perfectly aligned with the parent's interest; at this stage, there is no conflict between this interest of the state and its parallel interest in protecting the child. *In re Sanders*, 495 Mich at 415-417; see also MCL 712A.1(3) ("This chapter shall be liberally construed so that each juvenile coming within the court's jurisdiction receives the care, guidance, and control, *preferably in his or her own home*, conducive to the juvenile's welfare and the best interest of the state.") (emphasis added). Moreover, no additional cost or financial burden would have been incurred by the government had Nichols made the slight additional effort that

---

[2] Again, the referee did not make a record as to whether counsel had met with or discussed the matter with respondent prior to the hearing. On this paltry record, we are forced to presume that counsel and respondent never engaged in any manner of discussion prior to the hearing.

would have been necessary to have provided respondent with notice on the day before the hearing in this case. Had Nichols been trying diligently to contact respondent without success, reaching her only for the first time on the day of the hearing, our analysis would be different. But that is not what happened here. According to the record, Nichols spoke with respondent the day before the hearing but did not inform her of the scheduled hearing, instead waiting until the day of the hearing to try to inform her. Further, there is no evidence in the record that additional steps were taken to give respondent notice.

In light of the important private interest at stake, which coincides with the government's important interests of protecting children and preferring to keep family relationships intact, the importance and value of ensuring that adequate notice is given to respondent-parents in child-protective proceedings, and the relatively minimal effort that it would have taken to give respondent in this case more than a mere two hours' notice, we conclude that respondent was not provided with constitutionally sufficient due process under these circumstances. The process given to respondent in this case before removing her child was not "fundamentally fair." *Santosky*, 455 US at 753-754; *In re Brock*, 442 Mich at 111. "[W]hen notice is a person's due, process which is a mere gesture is not due process." *Mullane*, 339 US at 315. Here, the DHHS's attempt at notice barely qualifies as a "mere gesture." As is unfortunately all too common, the DHHS allowed its legitimate concern for protecting children to cause it to neglect its concomitant responsibility to also treat parents with fundamental fairness.

We therefore vacate the trial court's order to remove KF from respondent's care following the preliminary hearing. See *In re Sanders*, 495 Mich at 401, 422-423 (vacating the trial court's order limiting a father's contact with his children and requiring him to comply with services where the father had not been specifically adjudicated as unfit, reasoning that the order should be vacated because due process required a specific adjudication of a parent's unfitness before interfering with the parent-child relationship and an impermissible infringement on a parent's fundamental right to direct the care, custody, and control of the parent's child without providing adequate process is unconstitutional under the Due Process Clause of the Fourteenth Amendment); *Mullane*, 339 US at 307-309, 313, 319-320 (reversing a judgment because the beneficiaries of a common trust fund had received constitutionally insufficient notice of the proceedings affecting their property interests).[3]

---

[3] We conclude that respondent preserved her lack-of-notice argument. Respondent called the court and sought to adjourn the matter to a later date. The referee denied this request and addressed this decision on the record. "In general, issues that are raised, addressed, and decided by the trial court are preserved for appeal." *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014).

Petitioner argues on appeal that respondent waived any defects in notice because her appointed attorney represented her at the preliminary hearing and did not object to the notice received by respondent. Petitioner relies on MCR 3.920(H), which provides as follows:

> (H) Notice Defects. The appearance and participation of a party at a hearing is a waiver by that party of defects in service with respect to that hearing unless objections regarding the specific defect are placed on the record. If a party appears

Vacated and remanded for further proceedings not inconsistent with this opinion.  We do not retain jurisdiction.


/s/ Stephen L. Borrello
/s/ Amy Ronayne Krause
/s/ Michael J. Riordan

---

or participates without an attorney, the court shall advise the party that the appearance and participation waives notice defects and of the party's right to seek an attorney.

However, respondent did not appear and participate in the hearing.  Petitioner has not cited any authority for the proposition that appointing an attorney for an absent parent at a preliminary hearing constitutes a de facto waiver of defects in notice where the absent parent explicitly claims that notice was constitutionally deficient in violation of the parent's right to due process.  A trial court cannot cure constitutionally deficient notice to the parent simply by appointing counsel in the parent's absence.

Finally, in light of our determination regarding respondent's due-process issue, respondent's remaining appellate issue is moot and we decline to address it.  *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998).