*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JAMES RYAN ASSEMANY,

Plaintiff-Appellant,

v

JULIE ANN ASSEMANY, also known as JULIE
ANN HAHN,

Defendant-Appellee.

UNPUBLISHED
January 15, 2025
12:29 PM

Nos. 371694; 371832
Lapeer Circuit Court
Family Division
LC No. 2019-052968-DM

Before: GADOLA, C.J., and RICK and MARIANI, JJ.

PER CURIAM.

In this consolidated[1] child-custody matter, plaintiff-father appeals the trial court's order of referral to the Friend of the Court (FOC) regarding legal custody and parenting time. We reverse and remand.

## I. FACTUAL BACKGROUND

Father and defendant-mother were married on June 19, 2004. They share three children: ALA, AGA, and ARA.[2] Father filed a complaint for divorce in June 2019. The trial court entered a consent judgment of divorce in September 2020. As part of the consent judgment of divorce, the court awarded father sole legal and physical custody of the parties' minor children. At the time, mother resided in Florida and father resided in Michigan. Mother was permitted to exercise unsupervised parenting time in Michigan or in Florida. She was also permitted to participate in

---

[1] *Assemany v Assemany*, unpublished order of the Court of Appeals, entered August 21, 2024 (Docket Nos. 371694 and 371832). Father appeals as of right in Docket No. 371694, but appeals by leave granted in Docket No. 371832.

[2] This appeal solely concerns the care of the parties' youngest child, ARA, as the parties' two older children have reached the age of majority. Further, mother essentially relinquished any parenting relationship with ALA and AGA by entry of a consent order on June 1, 2022.

three "Facetime" or telephone visitations per week for a minimum of 30 minutes, in addition to in-person parenting time on certain holidays. The parties and their minor children were additionally required to participate in reunification therapy and mental health therapy.

Extensive litigation arising out of the consent judgment of divorce ensued, primarily centered on mother's failure to comply with the conditions regarding custody and parenting time. Mother relocated to Michigan on November 3, 2021. On June 1, 2022, the trial court entered an order regarding custody, parenting time, and support in response to a motion filed by father. The order continued father's sole legal and physical custody of the children. The order stated that no further reunification therapy between ALA, AGA, and mother was necessary, and that it was within ALA's and AGA's discretion to engage with her. However, reunification therapy remained mandatory for mother and ARA, in addition to parenting time with ARA on a graduated schedule, which was dependent on mother maintaining sobriety and participating in therapeutic visitation sessions.

On February 28, 2023, the trial court entered an order regarding noncustodial parenting time after an evidentiary hearing. The order stated, in relevant part:

> (a) The parenting time provisions of the June 1, 2022 Order Regarding Custody, Parenting Time, Support are suspended. Notwithstanding the foregoing, Plaintiff father shall continue to have sole legal custody and sole physical custody of the minor children of the parties, and child support shall continue to be set at zero.
>
> * * *
>
> (c) The parties, along with Samantha Hazelton, the individual therapist for [ARA] agree that it is in [ARA's] best interests that any parenting time plan with Defendant mother be suspended at this time and that [ARA] have a break from working on parenting time with Defendant mother.

Furthermore, the order barred mother from communicating or interacting with ARA during the period of suspension, with the exception of letters permitted by Hazelton. A reunification plan was to be discussed at the end of the 2023 school year.

On May 31, 2024, mother filed a verified motion to reinstate parenting time, joint legal custody, and for other relief. She contended that father was responsible for alienating her from the children, and that Hazelton, in her capacity as ARA's individual therapist, assisted father in doing so. Mother further alleged that she had maintained her sobriety and engaged in reunification therapy since the entry of the consent judgment of divorce, but still remained barred from exercising parenting time. Additionally, mother observed that Hazelton had only assumed her role as the minor children's therapist in March 2022, after the removal of ARA's previous therapist, Jordana Wolfson. Mother argued that Hazelton subsequently authored "bogus" reports regarding ARA's care and acted in an unprofessional manner. Mother also advanced that father removed ARA from school without her knowledge. Mother stated that she was concerned regarding ARA's mental health and wellbeing. To support her contentions against Hazelton, mother provided a report from Jane Kessler, a clinical psychologist. Kessler opined that she had concerns about

Hazelton's role as ARA's therapist, based on her examination of a letter authored by Hazelton in December 2023 regarding ARA and an email exchange between mother and Hazelton.

On June 10, 2024, the trial court held a hearing on the motion. Father's counsel shared that she contacted mother's counsel to request an adjournment of the hearing because father's counsel had yet to receive a complete copy of the subject motion or the relevant exhibits. Mother's counsel refused to agree to adjourn the matter. In response to the adjournment request, the court responded that the only openings available in the court's schedule were in September or October. The court proposed that the case be heard by a referee, who could "hear all this and make a recommendation." When father's counsel asserted that mother's counsel failed to make a threshold showing to warrant a review of the parties' legal custody and parenting time arrangement, the court, believing the parties were solely contesting parenting time, opined that it was "satisfied that there is a significant change of circumstances if nothing but time that's gone by. This case has been pending for over five years. So, at this time, I am going to refer it to the Referee for a hearing on parenting time."

Mother's counsel clarified that mother was additionally seeking joint legal custody of ARA, primarily based on the findings in Kessler's report. Father's counsel replied that it was a violation of due process for mother's counsel to rely on an exhibit that was not presented to opposing counsel to advance his argument, in addition to relying on that exhibit to establish the threshold showing of proper cause or a change in circumstances. The court asserted, "Yeah, [father is] gonna get a hearing, so that's his due process. I am simply referring it to the Referee for a hearing . . . and it'll include the issue of joint legal. You can argue it." On June 10, 2024, the trial court entered an order of referral to the FOC regarding the matters of legal custody and parenting time. This appeal followed.

## II. ANALYSIS

### A. PROPER CAUSE OR CHANGE IN CIRCUMSTANCES

Father argues that the trial court erred by referring the case to the FOC without adequately addressing whether there was proper cause or a change in circumstances warranting a reexamination of legal custody or parenting time. We agree.

We review child custody matters using the following standard:

In matters involving child custody, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue. This Court will not interfere with the trial court's factual findings unless the facts clearly preponderate in the opposite direction. Discretionary rulings, including a trial court's decision to change custody, are reviewed for an abuse of discretion. In child custody cases specifically, an abuse of discretion retains the historic standard under which the trial court's decision must be palpably and grossly violative of fact and logic. Clear legal error occurs when the trial court incorrectly chooses, interprets, or applies the law. This Court reviews the trial court's determination regarding a child's best interests for clear error. This

-3-

Court gives deference to the trial court's factual judgments and special deference to the trial court's credibility assessments. [*Brown v Brown*, 332 Mich App 1, 8-9; 955 NW2d 515 (2020) (quotation marks and citations omitted).]

In a child-custody dispute, a custody order or parenting time order may only be altered "for proper cause shown or because of change of circumstances" if it is in the best interest of the child. MCL 722.27(1)(c). If the trial court concludes that a proper cause or change in circumstances exists, then it is required to "determine whether there is an established custodial environment with one or both parents before making any custody determination." *Kessler v Kessler*, 295 Mich App 54, 61; 811 NW2d 39 (2011). "[A] party who seeks to change an established custodial environment of a child is required to show by clear and convincing evidence that the change is in the child's best interests." *Id*. If the proposed modification does not change the established custodial environment, then "the burden is on the parent proposing the change to establish, by a preponderance of the evidence, that the change is in the child's best interests." *Shade v Wright*, 291 Mich App 17, 23; 805 NW2d 1 (2010).

Before custody may be modified, "the trial court must determine whether the change of custody is in the children's best interests and . . . make specific findings of fact regarding each of the twelve statutory best-interest factors." *Johnson v Johnson*, 329 Mich App 110, 128-129; 940 NW2d 807 (2019). If a trial court inadequately adjudicates a child-custody matter, and the resulting error is not harmless, the proper remedy is to remand for reassessment or for a new child custody hearing. *Barretta v Zhitkov*, ___ Mich App ___ ; ___ NW3d ___ (2023) (Docket No. 364921); slip op at 10. On remand, a trial court should examine up-to-date information, including the child's present and reasonable preferences, in addition to any alternate changes in circumstances arising since the original custody order. *Id*. at ___; slip op at 13.

In *Vodvarka v Grasmeyer*, 259 Mich App 499, 509; 675 NW2d 847 (2003), this Court ruled that the threshold showing of proper cause or change in circumstances must be established *prior* to altering custody.

[T]o establish "proper cause" necessary to revisit a custody order, a movant must prove by a preponderance of the evidence the existence of an appropriate ground for legal action to be taken by the trial court. The appropriate ground(s) should be relevant to at least one of the twelve statutory best interest factors, and must be of such magnitude to have a significant effect on the child's well-being.

\* \* \*

[I]n order to establish a "change of circumstances," a movant must prove that, since the entry of the last custody order, the conditions surrounding custody of the child, which have or could have a *significant* effect on the child's well-being, have materially changed. Again, not just any change will suffice, for over time there will always be some changes in a child's environment, behavior, and well-being. Instead, the evidence must demonstrate something more than the normal life changes (both good and bad) that occur during the life of a child, and there must be at least some evidence that the material changes have had or will almost certainly have an effect on the child. [*Id*. at 512-514.]

This Court has resolved that an evidentiary hearing is not required to answer the initial factual question of whether proper cause or change in circumstances exists, because "[o]ften times, the facts alleged to constitute proper cause or a change of circumstances will be undisputed, or the court can accept as true the facts allegedly comprising proper cause or a change of circumstances, and then decide if they are legally sufficient to satisfy the standard." *Id*. at 512.

Here, the trial court failed to adequately consider, both during the motion hearing and in its subsequent order referring the underlying matter to the FOC, whether proper cause or a change of circumstances had arisen to justify revisiting parenting time and legal custody as established in the consent judgment of divorce. Instead, the court simply stated that it was "satisfied that there is a significant change of circumstances if nothing but time that's gone by." It further noted that "[t]his case has been pending for over five years."[3]

In reaching this determination, the trial court neglected to consider any of the substantive allegations discussed in mother's motion. It should have considered those allegations in order to resolve whether there was a change in circumstances to justify reexamining custody or parenting time following the issuance of the February 2023 order. See *Merecki v Merecki*, 336 Mich App 639, 647; 971 NW2d 659 (2021) ("In order to establish a change of circumstances, a movant must prove that the conditions surrounding the custody of the child have materially changed since the entry of the last custody order."). Moreover, the court disregarded the twelve statutory best-interest factors relevant to a determination that there was proper cause to revisit a custody order. See *Brown*, 332 Mich App at 9 (providing that, to establish proper cause necessary to reexamine custody, a movant must demonstrate the existence of an appropriate ground, which "should be relevant to at least one of the twelve statutory best interest factors, and must be of such magnitude to have a significant effect on the child's well-being" (quotation marks and citation omitted)).

The trial court further erred when it determined that the lesser legal standard iterated by this Court in *Shade* governed the underlying legal custody and parenting time issues. The *Shade* Court resolved that the *Vodvarka* threshold was inapplicable to a request solely pertaining to a change in parenting time, unless the proposed modification resulted in a change in the established custodial environment. *Id*. at 25-27. Rather, this Court opined:

> [A] more expansive definition of "proper cause" or "change of circumstances" is appropriate for determinations regarding parenting time when a modification in parenting time does not alter the established custodial environment.
>
> The *Vodvarka* definitions of "proper cause" and "change of circumstances" are inapplicable to this case, in part, because the rationale for imposing more stringent constructions on the terms "proper cause" and "change of circumstances"

---

[3] We note that, to the extent this statement was intended to suggest that custody and parenting time had not been evaluated in five years, it was factually incorrect, as the most recent order addressing custody and parenting time was entered in February 2023. In that order, the court suspended the parenting time provisions of a June 2022 order and continued its order that father was to maintain sole legal and physical custody of the minor children.

with respect to custody determinations is far less applicable with respect to parenting time determinations. With respect to child custody disputes, the goal of MCL 722.27 is to minimize unwarranted and disruptive changes of custody orders, except under the most compelling circumstances. Providing a stable environment for children that is free of unwarranted custody changes . . . is a paramount purpose of the Child Custody Act[.] Therefore, in the context of a child custody dispute, the purpose of the proper cause or change of circumstances requirement is to erect a barrier against removal of a child from an established custodial environment and to minimize unwarranted and disruptive changes of custody orders.

Such concerns do not exist, however, when a modification of parenting time does not alter the established custodial environment because determinations regarding child custody and parenting time serve different purposes. Whereas the primary concern in child custody determinations is the stability of the child's environment and avoidance of unwarranted and disruptive custody changes, the focus of parenting time is to foster a strong relationship between the child and the child's parents. [*Shade*, 291 Mich App at 28-29 (quotation marks and citations omitted).]

The *Shade* Court further clarified that "the very normal life change factors that *Vodvarka* finds insufficient to justify a change in custodial environment are precisely the types of considerations that trial courts should take into account in making determinations regarding modification of parenting time." *Id*. at 30.

While the passage of time may constitute the type of "normal life change" that would permit a reconsideration of parenting time, in the instant matter, mother requested a modification of parenting time *and* a change in legal custody. Furthermore, the trial court neglected to determine whether amending the parenting time agreement could result in a change of the established custodial environment to warrant the application of the *Vodvarka* standard. Indeed, the court did not comment on the existence of an established custodial environment at all. However, considering that mother maintained minimal contact with ARA for several years, and father has maintained sole legal custody and sole physical custody since the initiation of the underlying custody proceedings, it is likely that even a modification of parenting time alone would mandate an examination under *Vodvarka*. Regardless, because the contested order referred the matter to the FOC as to both legal custody and parenting time, the trial court erred when it neglected to apply the more stringent proper-cause-or-change-of-circumstances standard stated in *Vodvarka* to the parties' dispute.

Ultimately, the trial court committed clear error by failing to adequately address the threshold question of whether proper cause or a change in circumstances warranted referring this case to the FOC. See *Pennington v Pennington*, 329 Mich App 562, 576; 944 NW2d 131 (2019) (stating that "the trial court was precluded from considering whether a custody change was in the best interests of the child without first reaching the threshold question whether proper cause or a change of circumstances had been proved by a preponderance of the evidence"). Given the circumstances of this case, the error was not harmless. On remand, we direct the court to make this threshold determination, using the proper standards and considering the best-interest factors, before deciding whether the case warrants referral to the FOC.

## B. NOTICE

Father also argues that the trial court erred when it permitted mother to proceed with her motion to reinstate parenting time, joint legal custody, and for other relief, considering her noncompliance with the relevant notice provisions, and that doing so violated father's due-process rights. While mother's counsel failed to comply with applicable court rules governing notice of the motion, we disagree that father has shown that his due-process rights were violated.

Whether a party was denied due process of law presents a question of constitutional law, which we review de novo. *Bonner v Brighton*, 495 Mich 209, 221; 848 NW2d 380 (2014).

MCR 2.119(C) governs the time for service and filing of motions and responses and it states, in pertinent part:

(C) Time for Service and Filing of Motions and Responses.

(1) Unless a different period is set by these rules or by the court for good cause, a written motion (other than one that may be heard ex parte), notice of the hearing on the motion, and any supporting brief or affidavits must be served as follows:

(a) at least 9 days before the time set for the hearing, if served by first-class mail, or

(b) at least 7 days before the time set for the hearing, if served by delivery under MCR 2.107(C)(1) or (2) or MCR 1.109(G)(6)(a).

The register of actions indicates that mother filed her verified motion to reinstate parenting time, joint legal custody, and for other relief on May 31, 2024. During the subsequent motion hearing on June 10, 2024, father's counsel shared that she contacted mother's counsel to request an adjournment of the instant hearing because father's counsel had yet to receive a complete copy of the subject motion or the relevant exhibits. Father's counsel further shared that when asked for a full copy of the motion, mother's counsel only e-mailed portions of it and omitted the pertinent exhibits. On appeal, father provides the email exchange between the parties' counsel, which indicates that mother's counsel provided father's counsel with a purportedly complete copy of the contested motion on June 6, 2024. However, father's counsel subsequently noted that mother's counsel omitted any exhibits attached to the contested motion. Further, mother's counsel only supplied the Kessler report on June 10, 2024, the day of the motion hearing. Father's counsel alluded to that fact during the motion hearing, asserting that mother's counsel was "citing a hearsay document that I have never seen," in reference to the Kessler report. In light of the circumstances, mother failed to comply with the notice provisions iterated under MCR 2.119(C)(1)(a), as she did not present a complete copy of her subject motion to father within the pertinent timeframe.

However, to the extent that father argues he was denied due process due to a lack of proper notice, we disagree. "[P]arents have a significant interest in the companionship, care, custody, and management of their children, and the interest is an element of liberty protected by due process." *Barretta*, ___ Mich App at ___; slip op at 8. "Procedure in a particular case is constitutionally sufficient when there is notice of the nature of the proceedings and a meaningful opportunity to be

heard by an impartial decision maker." *Reed v Reed*, 265 Mich App 131, 159; 693 NW2d 825 (2005). While mother apparently neglected to provide a comprehensive copy of her contested motion to father, it did not constitute a breach of his procedural due-process rights. Father and his counsel were present during the motion hearing, and father's counsel contested the potential modification of the parties' legal custody and parenting time arrangement. Furthermore, father was subsequently able to file a response to mother's motion to reinstate parenting time, joint legal custody, and for other relief, in addition to a motion for reconsideration. The trial court ultimately denied the motion for reconsideration, opining that father failed to establish any palpable error warranting reconsideration. See MCR 2.119(F). Regardless, because father had notice of the hearing regarding mother's verified motion, the opportunity to be heard at the hearing, and the opportunity to have his subsequent challenges addressed by the trial court, he is not entitled to relief on due-process grounds.

We note, however, that while mother's counsel's conduct may not have violated due process considerations, it fell below not only the standards of our court rules, but the expectations for how counsel should engage with one another. Clients are not well served when their lawyers fail to maintain objectivity and professionalism. Gaming and toying with opposing counsel denigrates the process, can add costs to litigation, and deprives minor children of resources that could otherwise be used for their welfare. Extending professional courtesies on both sides should be commonplace.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Michelle M. Rick
/s/ Philip P. Mariani